STATE OF NORTH CAROLINA, PLAINTIFF v. RONALD GRAHAM, JR., DEFENDANT

No. COA06-837

(Filed 2 October 2007)

## 1. Sentencing— aggravating factors—not submitted to jury— special verdict

There was no plain error in sentencing this defendant between the decision in *Blakely* and the legislation expressly authorizing the submission of aggravating factors to a jury. The court submitted the aggravating factors to the jury by means of a special verdict.

**2. Evidence— victim impact—admission at guilt phase—no prejudice**

The trial court erred, but there was no prejudice, where it admitted testimony from an assault victim's mother about how witnessing the attack had affected her mental health. This was victim impact evidence which was improper at the guilt phase because it did not depict the context or circumstances surrounding the commission of the crime, and did not have any tendency to prove that defendant was the intruder. However, given the considerable evidence of defendant's guilt, there was no reasonable possibility of another verdict without the testimony.

**3. Constitutional Law— pre-arrest silence—cross-examination—no error**

There was no error where the trial court allowed the State to cross-examine defendant about his pre-arrest silence. The State was within its constitutional boundaries.

**4. Assault— knife as deadly weapon—evidence of serious wounds sufficient**

The trial court did not err by instructing the jury that a knife was a deadly weapon where the knife was neither introduced nor described in detail, but there was uncontroverted evidence that the victim suffered life-threatening injuries, including a collapsed lung and nine stab wounds that required closure in a hospital operating room.

**5. Evidence— instantaneous conclusion—door kicked in**

Testimony from officers at a burglary and assault scene that the front door had been forced or kicked in was admissible as a shorthand statement of fact because it constituted instantaneous conclusions drawn by the witnesses upon seeing the splintered door and the door frame ajar but still bolted.

**6. Burglary— instructions—intent controverted—misdemeanor breaking or entering as lesser included offense**

The trial court did not err in a first-degree burglary prosecution by not instructing the jury on felonious breaking or entering. When the State established all of the elements of first-degree burglary except intent, it also established all of the elements of felonious breaking or entering except intent. The court correctly instructed on the lesser included offense of misdemeanor breaking or entering.

Appeal by defendant from judgments entered 9 November 2005 by Judge Jerry R. Tillett in Pasquotank County Superior Court. Heard in the Court of Appeals 19 February 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General K. D. Sturgis, for the State.*

*Linda B. Weisel, for defendant-appellant.*

STROUD, Judge.

Defendant Ronald Graham, Jr., appeals from judgments entered pursuant to convictions for first-degree burglary and assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIK-ISI) in Pasquotank County Superior Court. Defendant contends that the trial court erred when it: (1) submitted aggravating factors to the jury and imposed a greater than presumptive sentence upon the jury's finding of one of the aggravating factors beyond a reasonable doubt; (2) admitted victim impact evidence at the guilt-innocence phase of the trial, specifically evidence of the impact of the crimes on the mental health of Lorine Spence; (3) allowed the State to cross-examine defendant about his pre-arrest exercise of the right to silence; (4) instructed the jury that a knife is a deadly weapon; (5) allowed two law enforcement officers to testify that the door of the home of Lorine Spence was forced open; and (6) failed to instruct the jury on the lesser included offense of felonious breaking or entering. After carefully reviewing the record, we conclude that defendant received a fair trial, including sentencing, free of prejudicial error.

## I. Background

On the night of 30 December 2004, Demetrius Spence (victim) was sleeping on a sofa in the home of his mother, Lorine Spence (Ms. Spence). Around midnight, defendant and James Ferebee broke the door and entered the home. Once inside, defendant stabbed the victim multiple times with a knife. The victim was taken to the hospital for treatment in the operating room of nine stab wounds, and a collapsed lung. Ms. Spence was present in the room during the incident, and she required mental health treatment as a result of witnessing the attack. Defendant fled the State to nearby Virginia after perpetrating the crime, and subsequently fled to Alabama when news of the crime was publicized in Virginia. He was arrested in Alabama.

On 28 February 2005, the Pasquotank County Grand Jury indicted defendant for first-degree burglary and AWDWIKISI. He was tried be-

fore a jury in Pasquotank County Superior Court on 8 and 9 November 2005. Defendant was found guilty of both crimes. Thereafter, the trial court sentenced defendant to 133 to 169 months for AWDWIKISI and to an enhanced sentence of 146 to 185 months for first-degree burglary, the two sentences to be served consecutively. Defendant appeals.

## II. Discussion

### A. Sentence Enhancement

[1] Defendant first contends that the trial court lacked jurisdiction to submit aggravating factors to the jury and impose an enhanced sentence based on an aggravating factor found by the jury beyond a reasonable doubt. Specifically, defendant offers the following syllogism: First, he argues that *Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403 (2004), recognizes the constitutional right to have aggravating factors proved to a jury before an enhanced sentence can be imposed. Second, he argues that absent an express statutory command, a trial court has no jurisdiction to submit aggravating factors to a jury. Therefore, he argues, all aggravated sentences are unconstitutional for crimes committed after *Blakely* was decided but before the General Assembly revised N.C. Gen. Stat. § 15A-1340.16[1] to expressly authorize submission of aggravating factors to a jury.

Defendant urges us to conduct a *de novo* review of this alleged jurisdictional question. We note initially that though defendant uses the word "jurisdiction," his brief alleges no facts which would have deprived the trial court of jurisdiction.[2] Properly characterized, defendant has assigned error to the constitutional propriety of the trial court's consideration of aggravating factors in sentencing. He did not raise this constitutional question to the trial court, therefore, we will review only for plain error. *State v. Bishop,* 346 N.C. 365, 385, 488 S.E.2d 769, 779-80 (1997); N.C.R. App. P. 10(c)(4).

---

1. N.C. Gen. Stat. § 15A-1340.16 gives the trial court the authority to impose enhanced sentences based on the finding of aggravating factors.

2. Jurisdiction is "the power to hear and to determine a legal controversy; to inquire into the facts, apply the law, and to render and enforce a judgment." *High v. Pearce,* 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941) (citation and quotation omitted); *State v. Batdorf,* 293 N.C. 486, 493, 238 S.E.2d 497, 502 (1977) ("Jurisdictional issues . . . relate to the authority of a tribunal to adjudicate the questions it is called upon to decide."). "The superior court has 'exclusive, original jurisdiction' to try defendants accused of felonies," *State v. Bell,* 121 N.C. App. 700, 701, 468 S.E.2d 484, 485 (1996) (quoting N.C. Gen. Stat. § 7A-271(a)), *cert. denied,* 483 S.E.2d 180 (1997), occurring in this State, *Batdorf,* 293 N.C. at 493, 238 S.E.2d at 502. It is undisputed that defendant was accused of a felony which occurred in Pasquotank County, North Carolina.

As defendant correctly asserts, *Blakely* held that before an aggravated sentence may be imposed, the Sixth Amendment grants "every defendant . . . the *right* to insist that the prosecutor prove to a jury all facts legally essential to the punishment." 542 U.S. at 313, 159 L. Ed. 2d at 420 (emphasis in original).

However, *Blakely* expressly declined to declare judicial discretion in sentencing to be unconstitutional; it "limit[ed] judicial power only to the extent that the claimed judicial power infringes on the province of the jury" to find facts essential to the defendant's punishment. 542 U.S. at 308-09, 159 L. Ed. 2d at 417.

At the time *Blakely* was decided, the law in North Carolina granted discretion to the trial court to impose an enhanced sentence, on the condition that "[t]he State . . . prov[es] by a preponderance of the evidence that an aggravating factor exists." N.C. Gen. Stat. § 15A-1340.16(a) (2003). Our Supreme Court subsequently held that *Blakely* did not nullify N.C. Gen. Stat. § 15A-1340.16 in its entirety, but instead declared unconstitutional only those portions which authorized the trial judge to enhance a sentence based on aggravating factors found by the judge by a preponderance of evidence and not found by a jury. *See State v. Allen*, 359 N.C. 425, 449, 615 S.E.2d 256, 272 (2005), *withdrawn*, 360 N.C. 569, 635 S.E.2d 899 (2006); *see also State v. Lucas*, 353 N.C. 568, 598, 548 S.E.2d 712, 732 (2001) ("*Apprendi* [the precursor of *Blakely*] d[id] not declare N.C.G.S. § 15A-1340.16A unconstitutional, but instead require[d] that the State meet the requirements set out in . . . *Apprendi* in order to apply the enhancement provisions of the statute."). Our Supreme Court also recognized that even before N.C. Gen. Stat. § 15A-1340.16[3] was amended to expressly authorize the submission of aggravating factors to the jury,

> North Carolina law independently permit[ed] the submission of aggravating factors to a jury using a special verdict. . . . It is difficult to imagine a more appropriate set of circumstances for the use of a special verdict than [to] safeguard[] [a] defendant's right to a jury trial [on aggravating factors] under *Blakely*.

*State v. Blackwell*, 361 N.C. 41, 46-48, 638 S.E.2d 452, 456-57 (2006), *cert. denied*, —— U.S. ——, 167 L. Ed. 2d 1114 (2007).[4] We conclude

---

3. The 2005 amendment to N.C. Gen. Stat. § 15A-1340.16 provides that "[i]f the defendant does not . . . admit [to the existence of an aggravating factor], only a jury may determine if an aggravating factor is present in an offense." N.C. Gen. Stat. § 15A-1340.16(a1).

4. Defendant urges us to ignore *State v. Blackwell*, and declare the use of a special verdict in the instant case unconstitutional, but "[i]t is elementary that this Court

that the trial court in the case *sub judice* did not violate defendant's constitutional right to a jury trial when it submitted aggravating factors to the jury by means of a special verdict. To the contrary, the trial court was scrupulously protecting defendant's constitutional right to a jury trial, exactly as *Blakely* required, when it relied on the jury's findings to aggravate defendant's sentence. Because no *Blakely* error was identified at all, there could be no plain error, and defendant's assignment of error is without merit.

B. Victim Impact Evidence

[2] Defendant next assigns error to the admission of testimony from Ms. Spence as to how witnessing the attack on her son had affected her mental health. Defendant, relying on *State v. Maske*, 358 N.C. 40, 50, 591 S.E.2d 521, 527-28 (2004), contends that evidence of the effect of the incident on Ms. Spence was victim impact evidence, and therefore irrelevant to determining his guilt or innocence. The testimony assigned as error was elicited by the State as follows:

Q. Is there anything different about your life now as opposed to before this happened to you?

[Defense Counsel]: Objection.

THE COURT: Overruled. Well, counsel approach.

(Counsel for the State and Counsel for Defendant approached the bench. Whereupon an off-the-record discussion was held.)

THE COURT: You may continue.

. . .

A. Well, it has sent me to the psychiatrist.

Q. Tell me about that.

A. [ . . . ] I done been there a lot of times. I still have appointments with him now.

Q. Now, when you go see the psychiatrist, where do you go?

A. [ . . . ] Albemarle Mental Health.

Q. Did you go see a psychiatrist before this happened?

A. No.

---

is bound by holdings of [our] Supreme Court." *Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996).

**STATE v. GRAHAM**

[186 N.C. App. 182 (2007)]

Q. [ . . . ] What made you decide that you wanted to go see a psy-chiatrist? What is going on with you?

A. Because I can't sleep. I keep having nightmares about what's happened that night. I can't even rest.

Q. What else?

A. [ . . . ] I just have nightmares.

Q. Have your sleep habits changed at all?

[Defense Counsel]:  Objection to the leading.

[Witness starts to talk over.]

THE COURT:  Sustained as to the form.

Q. Have you had any other changes concerning any of your daily habits or routines?

A. When I go out and I go to the American Legion Hut, I just plays—I usually go there and you know, what you call party-ing and dancing, but I don't do that anymore. . . .

Q. Did you do that more often before this happened?

. . .

A. Yes, I went there all of the time.

Q. Do you stay by yourself now?

. . .

[Defense Counsel]:  Objection to the leading, the constant leading.

THE COURT:  Overruled with some limited latitude.

A. Me and my little grand boy.

Q. All right. And do you do anything with regard to securing your house before you go to sleep?

[Defense Counsel]:  Objection to the leading.

[Witness starts to talk over.]

THE COURT:  Well, overruled, but limited latitude.

. . .

A. I puts [sic] some of my stuff up to my doors. I am still scared . . .

Q. Like what kind of stuff?

A. Like I put chairs there to the front and back on the latch and I have got another lock on the door.

. . .

Q. And what has changed about your sleep habits, if anything?

A. I can't sleep. I don't sleep much. I don't sleep no time hardly . . . .

Q. [. . . ] What made you decide after this happened that you needed to see anybody [at Albemarle Mental Health]?

A. Because I couldn't rest. I just can't rest. I just go to sleep and wake back up. I just keep seeing what is happening, you know, to my son. I keep on having that dream or whatever about it.

Q. And has that made you want to do anything?

A. It sure do. It sure did.

Q. Such as what?

A. It is a lot that I just had on my mind to do that I really wanted to do, if I could.

. . .

A. Because I wanted to get them back for doing that to my son. I really did. I wanted to get them back so bad I don't know what to do.

Q. And what about things with regard to yourself?

A. Sometimes I feel like doing something to my own self . . . .

Q. Okay. And what causes you to feel that way?

A. I just don't know. Because I couldn't help him at that time. That's what hurts me so bad. I couldn't help him.

The State argues that defendant's sole objection early in the line of questioning was not sufficient to properly preserve this issue for appellate review. However, a "sole [improperly overruled] objection . . . to a single line of questioning at one instance in the trial" is sufficient to preserve the entire line of questioning for appellate review, if the same evidence is not "admitted on a number of occasions throughout the trial." *State v. Brooks*, 72 N.C. App. 254, 258, 324

S.E.2d 854, 857 (citing N.C. Gen. Stat. § 15A-1446(d)(10)), *disc. review denied*, 313 N.C. 331, 327 S.E.2d 901 (1985). Because we believe, for the reasons that follow, that defendant's objection was improperly overruled, we will review the entire line of questioning.

A trial court errs when it admits irrelevant evidence. N.C. Gen. Stat. § 8C-1, Rule 402 ("Evidence which is not relevant is not admissible."). " 'Relevant evidence' means evidence having *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401; *see also State v. Sloan*, 316 N.C. 714, 724, 343 S.E.2d 527, 533 (1986) ("Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case."); *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) (holding that "circumstantial evidence tending to connect an accused with the crime" is relevant).

Victim impact evidence includes evidence of "physical, psychological, or emotional injury, [or] economic or property loss suffered by the victim." N.C. Gen. Stat. § 15A-833 (2005). Victim impact evidence also includes evidence of the effect of the crime on the victim's family, including the psychological and financial effect. *See, e.g., State v. Allen*, 360 N.C. 297, 309-10, 626 S.E.2d 271, 282 (evidence that victim's mother was devastated and suffered panic attacks is victim impact evidence), *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 116 (2006); *State v. Roache*, 358 N.C. 243, 315, 595 S.E.2d 381, 426-27 (2004) (evidence of physical, psychological, and emotional repercussions of murders on victims' family members is victim impact evidence); *State v. Barden*, 356 N.C. 316, 369-70, 572 S.E.2d 108, 141-42 (2002) (evidence that victim had a wife and child who depended on him for financial support is victim impact evidence), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003).

Victim impact evidence is generally relevant and admissible in sentencing, though its admissibility in sentencing "is limited by the requirement that the evidence not be so prejudicial it renders the proceeding fundamentally unfair." *Allen*, 360 N.C. at 310, 626 S.E.2d at 282; N.C. Gen. Stat. § 15A-833. However, the effect of a crime on a victim's family often has no tendency to prove whether a particular defendant committed a particular criminal act against a particular victim; therefore victim impact evidence is usually irrelevant during the guilt-innocence phase of a trial and must be excluded. *Maske*, 358 N.C. at 50, 591 S.E.2d at 527-28 (assuming without deciding that brief testimony from murder victim's sister about the effect of the crime on

her and her children was irrelevant at the guilt-innocence phase of the trial, but holding that admission of the evidence was harmless).

However, victim impact evidence which tends to show the context or circumstances of the crime itself, even if it also shows the effect of the crime on the victim and his family, is an exception to the general rule, and such evidence is relevant and therefore admissible at the guilt-innocence phase,[5] providing, of course, that it is not subject to one of the admissibility exceptions of Rule 402.[6] *Barden*, 356 N.C. at 349-50, 572 S.E.2d at 130-31 (evidence that murder victim sent money to his wife and child is victim impact evidence, but also tends to show how the victim handled his money, and is therefore relevant to guilt or innocence because it helps explain the circumstances of the crime); *accord State v. Agee*, 326 N.C. 542, 546-49, 391 S.E.2d 171, 173-75 (1990) (recognizing that otherwise collateral evidence is relevant when it tends to establish the context of the crime); *see also Payne v. Tenn.*, 501 U.S. 808, 823, 115 L. Ed. 2d 720, 734 (1991) ("In many cases the evidence relating to the victim is . . . relevan[t] at the guilt phase of the trial."); *id.* at 840-41, 115 L. Ed. 2d at 746 (Souter, J., concurring) ("[T]he usual standards of trial relevance afford fact finders enough information about surrounding circumstances to let them make sense of the narrowly material facts of the crime itself."); *Booth v. Maryland*, 482 U.S. 496, 507, 96 L. Ed. 2d 440, 451 n.10 (1987) (declaring victim impact evidence inadmissible at death penalty sentencing, but conceding that some victim impact evidence "may well be admissible because [it] relate[s] directly to the circumstances of the crime."), *overruled by Payne v. Tenn.*, 501 U.S. 808, 115 L. Ed. 2d 720 (1991) (even though *Payne* expressly overruled *Booth* and allowed victim impact evidence at sentencing, *Payne* cited *Booth* to note that victim impact evidence which also concerned the circumstances of the crime was relevant to determining guilt or innocence

---

5. Some jurisdictions have dealt with this distinction by concluding that evidence about the effect of the crime on the victim which also concerns the circumstances of the crime is not victim impact evidence by definition, rather than labeling it victim impact evidence and then excepting it from the general rule. *See, e.g., State v. Bennett*, 632 S.E.2d 281, 286 (S.C.) (holding that the testimony of the victims' mothers, which was limited to the circumstances surrounding the assault and battery of their sons and the extent of the injuries suffered thereby was not victim impact evidence, and therefore not irrelevant at the guilt-innocence phase), *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 530 (2006).

6. "All relevant evidence is admissible, *except* as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly or by these rules." N.C. Gen. Stat. § 8C-1, Rule 402 (emphasis added).

both before and after *Booth*); *State v. Fautenberry*, 650 N.E.2d 878, 882-83 (Ohio) (holding that evidence which depicted both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family is victim impact evidence, but is also relevant during the guilt-innocence phase), *cert. denied*, 516 U.S. 996, 133 L. Ed. 2d 439 (1995).

At closing argument, the State made specific reference to the above-quoted testimony, calling Ms. Spence a second victim of the crimes. We conclude that this portion of the testimony of Ms. Spence was victim impact evidence. Therefore, it would be relevant and admissible at the guilt-innocence phase of the trial only if it also depicted the context or circumstances surrounding the commission of the crime. However, there is nothing in this entire line of questioning which depicts the context or circumstances surrounding the commission of the crime. The quoted testimony does not have any tendency to prove that defendant was the intruder who broke into the home of Lorine Spence around midnight on 30 December 2004 and stabbed Demetrius Spence. Consequently, the admission of this testimony was error.

Having concluded that the trial court erred by admitting the foregoing evidence of the effect that the attack on Demetrius Spence had on the mental health of his mother, Ms. Spence, we now consider if it was reversible error which would entitle defendant to a new trial. N.C. Gen. Stat. § 15A-1447(a) (2005). Reversible error is present when " 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached.' " *State v. Williams*, 322 N.C. 452, 456-57, 368 S.E.2d 624, 627 (1988) (quoting N.C. Gen. Stat. § 15A-1443(a)).

Examining the entire record, we find that the State presented extensive evidence from two eyewitness who were well-acquainted with defendant and who positively identified him at trial, and evidence that defendant fled to Alabama shortly after hearing that the crime had been publicized. In light of the considerable evidence of defendant's guilt, we cannot say as a matter of law that absent the erroneous admission of victim impact evidence, there is a reasonable possibility that the jury's verdict would have been different. *State v. Robbins*, 319 N.C. 465, 502, 356 S.E.2d 279, 301, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). This assignment of error is overruled.

C. Right to Remain Silent

[3] Defendant assigns error to the following testimony, elicited by the State on cross-examination of defendant.

Q. When you found out what you were charged with, did you go tell the police "no I didn't have a weapon. No, this didn't happen?"

A. If I had done that, I might as well—

Q. My question was, did you go and do it?

A. No ma'am.

Defendant, relying on *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502-03 (1994) (holding that police testimony containing a brief and indirect mention of the defendant's silence during police questioning was harmless error), argues that the above-quoted testimony was plain error because it is well-established "that a criminal defendant's exercise of his constitutionally protected right[] to remain silent . . . may not be used against him at trial." *Id.* at 792, 448 S.E.2d at 502. Defendant further relies on *State v. Lane*, 301 N.C. 382, 384, 271 S.E.2d 273, 275 (1980), which held that the admission of evidence of defendant's post-arrest silence as to his alibi was prejudicial error, and *State v. Quick*, 337 N.C. 359, 365-67, 446 S.E.2d 535, 539-40 (1994), which granted a new sentencing hearing to the defendant on other grounds, but held that the trial court erred when it allowed the State to question both the defendant and a police investigator at trial about the defendant's silence when asked during a post-arrest interrogation, "how does it feel to kill a . . . man?" and then allowed the State to refer to this silence in closing argument at sentencing. Defendant also cites *State v. Durham*, 175 N.C. App. 202, 204-06, 623 S.E.2d 63, 65-66 (2005) (holding that it is prejudicial error for the State's closing arguments to make reference to the defendant's post-arrest silence), *State v. Shores*, 155 N.C. App. 342, 346, 573 S.E.2d 237, 242 (2002) (holding that the State's questions to defendant and police officer about defendant's silence after his arrest and the State's reference in closing argument to defendant's silence amounted to prejudicial error), and *State v. Ward*, 354 N.C. 231, 266, 555 S.E.2d 251, 273 (2001) (holding that it was prejudicial error for the State's closing argument in the sentencing phase of a capital murder trial to assert that defendant kept silent because he did not want to incriminate himself).

In response, the State argues that it was entitled to test the credibility of defendant's testimony, because "[a] testifying defendant is subject to impeachment by cross-examination generally to the same extent as any other witness," *State v. Lester*, 289 N.C. 239, 245, 221

S.E.2d 268, 272 (1976), especially when it concerns his silence before he was arrested, *Jenkins v. Anderson*, 447 U.S. 231, 238, 65 L. Ed. 2d 86, 94 (1980) (holding that cross-examination of a defendant about his pre-arrest silence regarding his defense of self-defense did not violate his right to silence under the Fifth Amendment).

When a criminal defendant testifies in his own behalf, "he waives his constitutional privilege not to answer questions tending to incriminate him." *State v. Griffin*, 201 N.C. 541, 542, 160 S.E. 826, 827 (1931). Further, a testifying criminal defendant is subject to cross-examination, *id.*, and "may be asked impeaching questions," *id.* at 543, 160 S.E. at 827. Questions about the defendant's silence *before* he was arrested are not prohibited, *Lane*, 301 N.C. at 384-85, 271 S.E.2d at 275 (citing *Jenkins v. Anderson*), though a defendant may not be impeached by inquiries into his refusal to answer questions after he has been arrested. 301 N.C. at 385, 271 S.E.2d at 275.

None of the cases that defendant relies on are apposite, because those cases declare unconstitutional prosecutorial questions about a defendant's silence *after* his arrest, or to the State's reference to a defendant's silence in closing argument, not as here, where the State briefly *cross-examined* defendant about his *pre-arrest* silence. The State was within its constitutional boundaries when it questioned defendant during cross-examination about his silence before he was arrested, and we hold that the trial court did not err in permitting the State to do so.

D. Knife as a Deadly Weapon

[4] Defendant next contends that the trial court erred when it instructed the jury that a knife is a deadly weapon. Defendant argues that when the State does not produce the actual knife, or describe it in detail at trial, the trial court may not instruct the jury that the knife allegedly used is a deadly weapon.

However, "[t]he deadly character of the weapon depends sometimes more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself." *State v. McKinnon*, 54 N.C. App. 475, 477, 283 S.E.2d 555, 557 (1981) (citation and quotation omitted) (holding that a small pocketknife is a deadly weapon when the stab wound results in a punctured lung). "Where the victim has in fact suffered serious bodily injury or death, the courts have consistently held that a knife is a dangerous or deadly weapon *per se* absent production or detailed description." *State v.*

*Smallwood,* 78 N.C. App. 365, 369, 337 S.E.2d 143, 145 (1985); *see also State v. Lednum,* 51 N.C. App. 387, 390, 276 S.E.2d 920, 922-23 (evidence of victim's week-long hospitalization, including treatment with intravenous glucose, stitches and a tube in his lung, and evidence of victim's month-long absence from work were sufficient for the trial court to instruct the jury that a knife is a deadly weapon, even though the knife was not produced at trial and the size of the knife was disputed), *disc. review denied,* 303 N.C. 317, 281 S.E.2d 656 (1981).

In the instant case, the knife was not introduced into evidence at trial, nor was it described in detail. However, the State introduced uncontroverted evidence that victim suffered life-threatening injuries, including a collapsed lung and nine stab wounds which required closure in a hospital operating room. The serious nature and extent of these injuries was sufficient for the trial court to instruct the jury that the knife used was a deadly weapon. This assignment of error is without merit.

E. Evidence that the Door was Forced Open

**[5]** Defendant next argues that the trial court erred when it admitted the following testimony from Deputy Randy Smithson: "When I got there, I noticed . . . [t]hat the front door had been forced open . . . . It was clear to me that the front door had been forced," and similar testimony from Officer Ashley Burge: "[S]omebody had kicked in the door . . . . The door had actually been locked to where when the door was kicked in, the deadbolt was still in the locked position but had pushed through the doorframe." Defendant argues that this testimony was inadmissible because it is improper lay opinion in violation of Rule 701 of the North Carolina Rules of Evidence.

It is well-settled that

[t]he instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, *matters of fact.*

*State v. Lloyd,* 354 N.C. 76, 109, 552 S.E.2d 596, 620 (2001) (emphasis added) (citation and quotation omitted). These instantaneous conclusions are often referred to as "shorthand statements of fact," and are not subject to the limits on lay opinion testimony found in Rule 701. *State v. Braxton,* 352 N.C. 158, 187, 531 S.E.2d 428, 445 (2000), *cert. denied,* 531 U.S. 1130, 148 L. Ed. 2d 797 (2001). This rule

applies even if the instantaneous conclusion is also an element of the charged offense. *State v. Daye*, 83 N.C. App. 444, 445-46, 350 S.E.2d 514, 515-16 (1986) (holding that the witness's conclusion that defendant concealed merchandise, stated as the witness described defendant rolling up clothes and putting them in her pocketbook, was admissible in defendant's trial for willfully concealing merchandise).

The above-quoted testimonial statements, considered in light of the context, were simply instantaneous conclusions drawn by the witnesses upon seeing the door standing ajar but still bolted, and the splintered door frame. The testimony of each witness was a shorthand statements of fact and therefore not barred by Rule 701. The trial court did not err in admitting it.

F. Omission of Instruction for Felonious Breaking or Entering

[6] Defendant next assigns error to the trial court's failure to instruct the jury on the lesser included offense of felonious breaking or entering. The trial court must instruct on a lesser included offense when "there is evidence from which the jury could find that defendant committed the lesser included offense [unless] the State's evidence is positive as to every element of the crime charged and there is no conflicting evidence relating to any element of the crime charged." *State v. Boykin*, 310 N.C. 118, 121, 310 S.E.2d 315, 317 (1984).

The essential elements of first-degree burglary are "(1) the breaking and entering (2) of an occupied dwelling of another (3) in the nighttime (4) with the intent to commit a felony therein." *State v. Robinson*, 97 N.C. App. 597, 602, 389 S.E.2d 417, 420, *disc. review denied and appeal dismissed*, 326 N.C. 804, 393 S.E.2d 904 (1990). Felonious breaking or entering is "break[ing] or enter[ing] any building [including a dwelling] with intent to commit any felony or larceny therein." N.C. Gen. Stat. § 14-54(a) (2005). Misdemeanor breaking or entering is "wrongfully break[ing] or enter[ing] any building." N.C. Gen. Stat. § 14-54(b) (2005).

Breaking is defined as

any act of force, however slight, employed to effect an entrance through any usual or unusual place of ingress, whether open, partly open, or closed. A breaking may be actual or constructive. A defendant has made a constructive breaking when another person who . . . is acting in concert with the defendant actually makes the opening.

*State v. Bray,* 321 N.C. 663, 673, 365 S.E.2d 571, 577 (1988) (internal citations and quotations omitted). Acting in concert means that the defendant is "present at the scene of the crime" and acts "together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Joyner,* 297 N.C. 349, 357, 255 S.E.2d 390, 395 (1979).

The uncontroverted evidence in the record, testified to by the eyewitnesses and by defendant is that: defendant and James Ferebee went during the night, to a dwelling occupied by victim and his mother. The door was closed when they arrived; either defendant or James Ferebee kicked open the door. This was a breaking. It is immaterial, on these facts, whether defendant or Ferebee applied the force necessary to open the door. If Ferebee applied the force, it is uncontroverted that he and defendant were acting in concert. Defendant and Ferebee entered through the open door.

The State therefore established by positive and uncontroverted evidence that defendant and Ferebee broke and entered the dwelling of Lorine Spence during the nighttime. The only element of first-degree burglary which is controverted is defendant's intent when he entered the home. The State's evidence tended to establish that defendant and Ferebee were armed and entered the home with the intent to commit the felony of AWDWIKISI. Defendant testified that at the time he and Ferebee entered, he was unarmed and had no intention other than peacefully resolving a pre-existing dispute with victim. Because the State established all the elements of first-degree burglary, except the intent with which defendant entered the home, with positive and uncontroverted evidence, it also established the elements of felonious breaking or entering except for intent. It was therefore not error for the trial court to omit an instruction for the lesser included offense of felonious breaking or entering. Instead, because the evidence as to defendant's intent was circumstantial and controverted, the trial court was required to instruct on the lesser included offense of misdemeanor (non-felonious) breaking or entering, which it did. We conclude that the trial court did not err when it omitted a jury instruction on felonious breaking or entering.

## III. Conclusion

The trial court did not err when it (1) submitted aggravating factors to the jury via a special verdict and imposed a greater than presumptive sentence on defendant upon the jury's finding of one of those factors beyond a reasonable doubt; (2) allowed the State to

cross-examine defendant about his pre-arrest silence; (3) instructed the jury that the a knife was a deadly weapon; (4) allowed two law enforcement officers to testify that the door to Ms. Spence's home was forced open; and (5) failed to instruct the jury on the lesser included offense of felonious breaking or entering.

We also conclude that the trial court erred by allowing the State to elicit testimony about the effect of the crime on Ms. Spence when that testimony had no tendency to show the context or circumstances of the crime. However, that error did not prejudice defendant, because there was no reasonable possibility that the outcome of the trial would have been different absent the admission of this evidence. Accordingly, we hold that defendant received a fair trial, free of prejudicial error.

NO PREJUDICIAL ERROR.

Chief Judge MARTIN and Judge HUNTER concur.