HUNTER, JR., Robert N., Judge.
Christopher Antonio Ervin, Jr. ("Defendant") appeals jury verdicts convicting him of felonious breaking or entering and being a habitual felon. On appeal, Defendant asserts the following: (1) his trial counsel rendered ineffective assistance of counsel by failing to file an affidavit with Defendant's motion to suppress; (2) the victim's testimony about anxiety, trauma, and fear from the intrusion was irrelevant and plain error; (3) the victim's testimony about Defendant's mother paying for damage to the victim's back door was irrelevant hearsay testimony and plain error; and (4) the trial court erred by failing to instruct the jury on misdemeanor breaking or entering. We dismiss, without prejudice, Defendant's ineffective assistance claim and hold Defendant failed to demonstrate reversible error.
I. Factual and Procedural Background
On 27 April 2015, the Mecklenburg County Grand Jury indicted Defendant for felonious breaking and entering. On 8 April 2016, Defendant filed a Motion to Suppress the show-up identification.
On 9 May 2016, the trial court called Defendant's case for trial. The trial court first addressed Defendant's pre-trial motions. Regarding Defendant's motion to suppress, the State mentioned Defendant's trial counsel failed to attach an affidavit to support the motion to suppress, which is required by N.C. Gen. Stat § 15A-977(a) (2016). Defendant's trial counsel described this error as an "oversight." The trial court denied Defendant's motion, based on trial counsel's "failure to provide the affidavit." Defendant pled not guilty to felonious breaking or entering, and the trial court called his case for trial.
The State first called Cherry Shuler. Shuler arrived at court by police escort, because she did not feel safe. On 9 April 2015, while at home alone, she heard a knock at her front door but did not answer. She noticed the person who knocked was a "[t]all, black guy. He had kind of like an Afro. He had on an aqua shirt, gray sweat pants, and light-colored shoes." Five to eight minutes later, she heard a loud "boom" and heard her back door kicked off its hinges.
Shuler called 911, then grabbed her gun. Confronting the intruder, she asked, "why [are you] trying to break in my house?" The intruder stood "[p]robably five to six feet" from Shuler. The intruder "started coming towards" her, so she pulled out her gun and shot near him. None of Shuler's bullets hit the intruder. The intruder bolted. This encounter with the intruder lasted "one or two minutes." The light was "very good" in Shuler's home, and Shuler got a "good look" at him. In court, Shuler identified Defendant as the intruder.
Sometime after officers arrived, Shuler accompanied officers to an identification proceeding at a street about a mile away from her home. While viewing the Defendant from a police car, Shuler identified Defendant as the intruder. At that time, Shuler said she was "one-hundred percent" certain of her identification and had "[n]ot one doubt". On cross-examination, Shuler described the intruder again, and said the intruder had facial hair.
The event was "traumatic" to Shuler. She told the jury:
Every day I have to look behind me. I've got anxiety. I'm constantly, every time I hear a noise, thinking someone is going to break in my house. I haven't been sleeping well. Not only did he violate my space, but he violated my peace of mind and my sense of well-being. I'll never be the same. You know, you think bad things happen at night, and you know, you should always watch your back at night. But this happened at 11:00 in the day. It's changed my life in a very profound, negative way. I'll never be the same. I'll never be able to walk into my house and feel safe. He took that away from me that day.
A few days after the intrusion, Defendant's mother came to Shuler's home and apologized. Defendant's mother also gave $265.00 to Shuler, to pay for Shuler's door damage.
The State next called Peter Carbonaro, a detective with Charlotte-Mecklenburg Police Department ("CMPD"). Based on a call for service, Detective Carbonaro learned that a breaking and entering occurred three blocks from his location. The call for service indicated the suspect was a "black male, late teens or early twenties, wearing a teal shirt and gray sweat pants...."
Detective Carbonaro drove towards the incident. He noticed someone matching the intruder's description walking "at a brisk pace." Defendant "cut across in front of" Detective Carbonaro's SUV. Detective Carbonaro got out of his SUV and introduced himself to Defendant. He asked Defendant to speak with him. Defendant was out of breath. He "sweat[ed] profusely." He was "a little nervous" and "apprehensive." Detective Carbonaro instructed Defendant to sit down next to the SUV.
Detective Carbonaro called other officers for an on-location "show-up"[1] of the Defendant. Officer Quentin Blakeney drove Shuler to the show-up. Detective Carbonaro walked Defendant "probably twenty feet, maybe fifteen feet" away from Officer Blakeney's car. Shuler identified Defendant as the person who broke into her home. Detective Carbonaro placed[2] Defendant under arrest.
The State called Officer Blakeney. A little after 11:00 a.m., he arrived at Shuler's home. Shuler told him about the break-in. She described the intruder as "a black male, skinny, about 5'10" or six feet tall, wearing a teal shirt and gray sweat pants, and teal sneakers."
Officer Blakeney brought Shuler to the show-up. He parked "five or ten yards" from the Defendant. He instructed Shuler to "make sure she got a good look [.]" Shuler identified Defendant as the intruder and said she was "a hundred percent positive."
The State next called Kathleen Havens, a detective with CMPD. "[A] couple of months" after the break in, Pastor Grier[3] came to the station to speak with her. Pastor Grier told officers he had information about the crime. Pastor Grier's son, Jerry Grier, was held in the same pod as Defendant, in "jail north." His son and Defendant spoke about the burglary. On 6 April 2016, Detective Havens and Detective Blum interviewed Jerry Grier. Detective Havens recorded the interview, and the State admitted the recording into evidence.
The State called Jerry Grier. "Sometime in 2015[,]" Defendant and Jerry spoke about the case. Defendant told Jerry the victim was "the only person that could ... get him charged, get him convicted[.]" Defendant planned "to have the victim checked[4] so she wouldn't show up for court."
The State rested. Defendant moved to dismiss the case.[5] The trial court denied Defendant's motion. Defendant did not present any evidence. Defendant renewed his motion to dismiss, and the trial court denied Defendant's motion.
Before the jury charge, the State asked for instructions on felonious breaking or entering. Defendant asked the trial court to also instruct the jury on misdemeanor breaking or entering. The trial court denied Defendant's request and only instructed the jury on felonious breaking or entering.
The jury found Defendant guilty of felonious breaking or entering. The State charged Defendant with being a habitual felon and the aggravating factor of willfully violating a condition of probation. While the jury deliberated on the aggravating factor, Defendant's trial counsel asked, "Your Honor, would it be premature at this point to give the Court Notice of Appeal?" The trial court responded, "Yeah, it would be." The jury found Defendant guilty of being a habitual felon and the aggravating factor. The trial court sentenced Defendant as a Level IV offender and sentenced Defendant to 97 to 127 months imprisonment.
On 22 December 2016, Defendant filed his appellant brief. On the same day, Defendant filed a petition for writ of certiorari. On 29 December 2016, the State filed its response to Defendant's petition and a motion to dismiss.
II. Standard of Review
We review Defendant's arguments regarding ineffective assistance of counsel de novo . State v. Wilson , 236 N.C. App. 472, 475, 762 S.E.2d 894, 896 (2014) (citation omitted).
Regarding Defendant's second and third issues on appeal, "an issue that was not preserved by objection noted at trial ... may be made the basis of an issue presented on appeal when the judicial action question is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4) (2016). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done [.]" State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotation marks and citation omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993) (citation omitted).
The question of whether a trial court erred in instructing the jury is a question of law and is reviewed de novo . State v. Osorio , 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted).
III. Analysis
We review Defendant's contentions in five parts: (A) petition for writ of certiorari; (B) ineffective assistance of counsel; (C) victim impact testimony; (D) hearsay testimony; and (E) jury instructions.
A. Petition for Writ of Certiorari
"The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action...." N.C. R. App. P. 21(a)(1) (2016). At trial, Defendant tried several times to enter oral notice of appeal, once before sentencing, and once while the jury deliberated his status as a habitual felon. However, Defendant's attempts to give notice were premature. On 22 December 2016, Defendant filed his appellant brief and a petition for writ of certiorari. The State moved to dismiss Defendant's appeal, arguing "[i]n order to promote the administration of justice, this Court should require compliance with its own procedural rules." While we allow the State's motion to dismiss, in our discretion, we allow Defendant's petition and reach the merits of his appeal.
B. Ineffective Assistance of Counsel
On appeal, Defendant contends trial counsel violated his right to effective assistance of counsel by failing to submit an affidavit in support of Defendant's motion to suppress. Ineffective assistance of counsel claims may be raised in post-conviction proceedings and not on direct appeal. See State v. Fair , 354 N.C. 131, 166, 557 S.E.2d 500, 524-25 (2001). Such claims may, however, be raised on direct appeal when the cold record reveals no further factual development is necessary to resolve the issue. Id. at 166, 557 S.E.2d at 524-25 (citations omitted). Because we deem the record insufficient to address the ineffective assistance claim, we dismiss Defendant's ineffective assistance of counsel claim without prejudice to his right to file a motion for appropriate relief.
C. Victim Impact Testimony
Defendant contends the trial court committed plain error in allowing Shuler's irrelevant victim impact testimony. While all parties agree Shuler's victim impact testimony is irrelevant, we hold its admission does not amount to plain error.
Defendant failed to object at trial to the testimony he now challenges on appeal. Our review is limited to plain error. See N.C. R. App. P. 10(a)(4).
"A trial court errs when it admits irrelevant evidence." State v. Graham , 186 N.C. App. 182, 190, 650 S.E.2d 639, 645 (2007) (citation omitted). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2016).
Generally, victim impact evidence is irrelevant during the guilt-innocence portion of a trial. Graham , 186 N.C. App. at 190, 650 S.E.2d at 645 (citation omitted). "Victim impact evidence includes evidence of 'physical, psychological, or emotional injury, [or] economic or property loss suffered by the victim." Id. at 190, 650 S.E.2d at 645 (quoting N.C. Gen. Stat. § 15A-833 ).
In this case, Shuler testified and described her fear and anxiety. She explained she no longer slept well and will "never be the same." Additionally, police officers escorted Shuler to court for trial, because she did not feel safe. We conclude this portion of Shuler's testimony was impermissible victim impact evidence during the guilt-innocence phase of Defendant's trial. These parts of Shuler's testimony do not have any tendency to prove Defendant was the intruder who broke into Shuler's home on 9 April 2015. Thus, the admission of this testimony was error.
Having concluded the trial court erred by admitting Shuler's victim impact testimony, we must now consider whether the admission amounts to plain error. Defendant argues the error amounts to plain error due to the amount of victim impact testimony allowed by the trial court and the State's use of the victim impact testimony in closing arguments. Examining the entire record, we do not perceive a likelihood that the jury would have acquitted Defendant had the trial court excluded Shuler's testimony about her anxiety, fear, and police escort. Jordan , 333 N.C. at 440, 426 S.E.2d at 697 (citation omitted). Moreover, this error is not one "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]" Odom , 307 N.C. at 660, 300 S.E.2d at 378 (citation omitted). Thus, we conclude this error does not amount to plain error. This assignment of error is overruled.
D. Hearsay Testimony
Defendant next contends the trial court committed plain error by allowing irrelevant hearsay testimony regarding Defendant's mother. Defendant's arguments are three-fold: (1) this testimony is irrelevant; (2) the testimony is inadmissible hearsay; and (3) the admission of this testimony amounts to plain error. We disagree.
Defendant failed to object to Shuler's testimony at trial. We review for plain error. See N.C. R. App. P. 10(a)(4). See Jordan , 333 N.C. at 440, 426 S.E.2d at 697 (citation omitted); Odom , 307 N.C. at 660, 300 S.E.2d at 378 (citation omitted).
Hearsay is generally inadmissible. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801 (c). "A 'statement' may be a written or oral assertion or nonverbal conduct intended by the declarant as an assertion." State v. Sibley , 140 N.C. App. 584, 587, 537 S.E.2d 835, 838 (2000) (citation omitted). "An act, such as a gesture, can be a statement for purposes of applying rules concerning hearsay." Id. at 587, 537 S.E.2d at 838 (citations omitted).
Defendant argues these portions of Shuler's testimony "had a probable impact on the verdict because it improperly suggested to the jury that [Defendant] had confessed to the crime to his parents or otherwise let them know of his guilt." Moreover, Defendant contends the testimony regarding Defendant's mother's apology to Shuler is "classic hearsay" and the payment for damages is non-verbal hearsay.
Shuler testified:
Q[:] You said you didn't know Mr. Ervin, the Defendant. Did you know the Defendant's mother?
A[:] No.
Q[:] Have you met her?
A[:] Yes.
Q[:] When?
A[:] She came by a few days after the incident to apologize.
Q[:] Now, because I'm not calling her as a witness I can't ask you what she said, but what happened when she met with you?
A[:] She paid for my door to be repaired.
First, we disagree with Defendant's assertion that the testimony regarding Defendant's mother was irrelevant. The fact Defendant's mother apologized to Shuler and paid for Shuler's door repairs is, indeed, relevant. The evidence tends to prove a fact of consequence, whether or not Defendant was the perpetrator of this crime.
Second, we agree the trial court committed error in permitting Shuler's hearsay testimony. Defendant's mother's apology is inadmissible hearsay. The State argues Shuler's testimony about Defendant's mother's apology is not hearsay, because it is not being offered to prove the truth of the matter asserted. According to the State, "the only matters asserted were the mother's visit and her payment for the broken door." We cannot agree. Shuler testified about the contents of a statement from Defendant's mother, the apology. Thus, the matter asserted is an apology. Even though, at trial, the State conceded "I can't ask you what she said ...", the hearsay evidence of Defendant's mother's apology had already been admitted by Shuler's testimony.
We must now consider whether the trial court committed plain error by allowing the testimony. We conclude this error does not amount to plain error. The error is not "so basic, so prejudicial, so lacking in its elements that justice cannot have been done." Odom , 307 N.C. at 660, 300 S.E.2d at 378 (citation omitted).
Moreover, we cannot say "that absent the error, the jury probably would have reached a different result." Jordan , 333 N.C. at 440, 426 S.E.2d at 697 (citation omitted). Even excluding the impermissible victim impact and hearsay testimony, the victim, after observing Defendant several times at her home, identified him at the show-up and in court as the intruder. Additionally, Jerry Grier testified Defendant confessed committing the crime to him.[6] Accordingly, we overrule this assignment of error.[7]
E. Jury Instructions
Finally, Defendant contends the trial court erroneously failed to instruct the jury on misdemeanor breaking or entering. We disagree.
An instruction on a lesser-included offense must be given if there is substantial evidence to support the conviction of the lesser-included offense. See State v. Richmond , 347 N.C. 412, 431, 495 S.E.2d 677, 687 (1998) (citation omitted). The trial court is not, however, obligated to give a lesser-included instruction if there is "no evidence giving rise to a reasonable inference to dispute the State's contention[s]...." State v. McKinnon , 306 N.C. 288, 301, 293 S.E.2d 118, 127 (1982). Thus, the mere possibility a jury might reject part of the prosecution's evidence does not require submission of a lesser-included offense. State v. Barnette , 96 N.C. App. 199, 202, 385 S.E.2d 163, 164 (1989) (citation omitted).
"The essential elements of felonious breaking or entering are (1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." State v. Litchford , 78 N.C. App. 722, 725, 338 S.E.2d 575, 577 (1986) (citing N.C. Gen. Stat. § 14-54(a) ). Misdemeanor breaking or entering is a lesser included offense of felonious breaking or entering. State v. Dickens , 272 N.C. 515, 516-17, 158 S.E.2d 614, 615 (1968) (citations omitted). The only distinction between the two offenses is that misdemeanor breaking or entering does not include the element of intent to commit a felony or larceny therein. Id. at 516, 158 S.E.2d at 615.
Where the only evidence of the defendant's intent to commit a felony in the building or dwelling was the fact that the defendant broke and entered a building or dwelling containing personal property, the appellate courts ... have consistently and correctly held that the trial judge must submit the lesser included offense of misdemeanor breaking and entering to the jury as a possible verdict.... However, where there is some additional evidence of the defendant's intent to commit the felony ... and there is no evidence that the defendant broke and entered for some other reason, then the trial court does not err by failing to submit the lesser included offense of misdemeanor breaking and entering to the jury as a possible verdict.
State v. Mangum , 158 N.C. App. 187, 196, 580 S.E.2d 750, 756 (2003) (quoting State v. Patton , 80 N.C. App. 302, 305-06, 341 S.E.2d 744, 746-47 (1986) ).
Defendant argues conflicting facts in the case mandate a jury instruction on misdemeanor breaking or entering. Defendant alleges the trial court thought the decision on jury instructions was a "close case" and "not clear cut." Defendant argues the fact "he was in and around Shuler's home for one to two minutes" and that the intruder "[c]learly had the opportunity" to commit larceny, but did not take anything, calls for a jury instruction of misdemeanor breaking or entering.
Here, the evidence does not support instructing the jury on the lesser-included offense of misdemeanor breaking or entering. This is not a case "[w]here the only evidence of the defendant's intent to commit a felony in the building was the fact that the defendant broke and entered a building or dwelling containing personal property...." Id. at 196, 580 S.E.2d at 756 (quoting Patton , 80 N.C. App. at 305, 341 S.E.2d at 746-47 ). According to Grier's interview with detectives, Defendant broke into Shuler's home "to see what he could get."[8] Thus, there was "some additional evidence of the defendant's intent to commit the felony." Id. at 196, 580 S.E.2d at 756 (quoting Patton , 80 N.C. App. at 305, 341 S.E.2d at 747 ).
Additionally, there is no evidence Defendant broke and entered for some other reason besides to commit a larceny. Defendant is correct there was no evidence introduced at trial that he took anything from Shuler's home. However, the evidence did not support a jury instruction on a lesser-included offense because the jury could have inferred felonious intent from evidence presented. Moreover, Defendant failed to present evidence he broke and entered Shuler's home for a non-larcenous reason. See generally State v. Myrick , 306 N.C. 110, 115, 291 S.E.2d 577, 580 (1982) (citation omitted) (noting "[w]ithout other explanation for breaking into the building or a showing of the owner's consent, intent may be inferred from the circumstances.").
Additionally, Defendant mischaracterizes the trial court's statements during the jury charge conference. When Defendant requested instructions on misdemeanor breaking or entering, the trial court stated it wondered "whether or not a lesser included should be given...." However, the trial court continued and clarified the "wondering" occurred "until Mr. Grier testified." Thus, the trial court never stated it was a "close call."
Accordingly, the trial court did not err in refusing to give an instruction on misdemeanor breaking or entering.
IV. Conclusion
For the foregoing reasons, we dismiss Defendant's ineffective assistance of counsel claim, without prejudice to refile as a motion for appropriate relief, and hold Defendant's remaining assignments of error are overruled.
DISMISSED IN PART; NO ERROR IN PART; NO PLAIN ERROR IN PART.
Report per Rule 30(e).
Chief Judge McGEE concurs.
Judge McCULLOUGH concurs prior to 24 April 2017.

Detective Carbonaro described a show-up as:
where you have somebody that matches the description of the crime that happened in the vicinity of the area, and the victim is willing and able to come out. They're driven out by a police officer and they're shown to the victim to see if that's the person that committed that crime.

The transcript is unclear regarding the exact sequence of events and when officers arrested Defendant.

The record does not disclose if "Pastor" is this man's first name, or his title.

Jerry defined "checked" as "to shake them up, you know, to try to scare them so, you know, they won't appear for court, that type of thing."

Technically, Defendant did not move to dismiss the case after the State rested. Instead, he moved to dismiss after he rested. Then, the jury left. However, the trial court held a recorded bench conference and explained it wanted Defendant to make the motion after the jury left, and not right after the State rested.

Defendant asks us to ignore Jerry's testimony regarding Defendant's confession due to alleged faults with Jerry's credibility. However, credibility of a witness is a matter left to the jury. State v. Reid, 175 N.C. App. 613, 624, 625 S.E.2d 575, 585 (2006) (citation omitted).

We hold Shuler's testimony about Defendant's mother paying for her door damage would not amount to plain error, if error at all.

Throughout Defendant's brief, and at trial, Defendant attempts to undercut the veracity of Jerry's testimony by labeling Jerry a "career snitch" and labeling the testimony as "unreliable snitch testimony [.]" However, the mere possibility a jury might reject part of the prosecution's evidence does not require submission of a lesser-included offense. Barnette, 96 N.C. App. at 202, 385 S.E.2d at 164 (citation omitted). Additionally, as stated supra, the credibility of a witness is a fact left to the jury. Reid, 175 N.C. App. at 624, 625 S.E.2d at 585 (citation omitted).