McGEE, Chief Judge.
 

 *673
 
 Drew Thomas Charleston ("Defendant") appeals from his convictions of discharging a firearm into occupied property and possession of a firearm by a felon. We find no error in part and no plain error in part.
 

 I. Background
 

 The evidence presented at trial tended to show that, on the evening of 11 January 2014, Trevacyia Scales ("Ms. Scales") and her five-year-old daughter were at home. Sandra Knox ("Ms. Knox") lived next door to Ms. Scales and also was at home. Ms. Scales testified that Defendant, Ms. Scales's ex-boyfriend, came by her home that evening, unannounced. Defendant's cousin had driven Defendant to Ms. Scales's home in a gray Jeep Cherokee. Defendant told Ms. Scales that he wanted to collect his clothes, and Ms. Scales gave him a bag with some clothes inside. Defendant also said he wanted to retrieve a shotgun that he believed was under the mattress in Ms. Scales's bedroom. Ms. Scales refused to let Defendant go into her bedroom. When Defendant went out to signal his cousin to get out of the Jeep, Ms. Scales closed her front door and locked it. Defendant and his cousin then left in the Jeep. Ms. Scales testified she went to her bedroom and checked under the mattress and the bed for a shotgun that she did not find.
 

 Shortly thereafter, Defendant called Ms. Scales and they argued about the shotgun. Ms. Scales testified Defendant told her: "Well, I'm going to show you. I'm going to show you. I'm going to let it ride for
 
 *674
 
 now, but I'm going to show you better than I can tell you." After the phone call, Ms. Scales sat on her couch, located at the front of her
 
 *515
 
 home and under a window. She noticed a Jeep driving down her street that "looked like the same Jeep Cherokee" Defendant had arrived in earlier. Ms. Scales testified the Jeep came to a brief stop in front of a neighbor's home and then started rolling again towards her home. As the Jeep approached, the rear driver's side window rolled down, and Ms. Scales saw Defendant sitting in the back seat. Ms. Scales heard gun shots and crawled to her daughter's room that was also at the front of her home. Ms. Scales immediately called law enforcement.
 

 While the police were searching Ms. Scales's home, Defendant called Ms. Scales again. The police asked Ms. Scales to put the call on speakerphone so they could hear the conversation. Ms. Scales testified she called Defendant by name and he responded. Defendant again demanded the shotgun. A female voice said to Ms. Scales: "Just give him the gun, and it will all go away." Ms. Scales testified that another man then got on the phone and said the gun belonged to him and he wanted it back. Defendant then returned to the line and allegedly stated: "Next time, they'll come through the window."
 

 Ms. Scales and Officer Frederick D. West ("Officer West"), with the Salisbury Police Department, testified that none of the bullets fired that evening actually entered into Ms. Scales's home. Ms. Knox and Sergeant Adam Bouk ("Sergeant Bouk") testified that all the bullets entered into the home of Ms. Knox. When the shots were fired, Ms. Knox was lying on her couch watching television. Ms. Knox estimated there were at least six or seven bullet holes in her home. Officer Joe Wilson ("Officer Wilson") testified there were seven shell casings in the street near where the Jeep had been located.
 

 Defendant was indicted on 10 March 2014 for one count of discharging a firearm into occupied property and one count of possession of a firearm by a convicted felon. The jury found Defendant guilty of one count of discharging a firearm into occupied property and one count of possession of a firearm by a convicted felon. He was sentenced to 84-113 months of imprisonment for discharging a firearm into occupied property and 36 months of supervised probation for possession of a firearm by a convicted felon. Defendant appeals.
 

 II. Motion to Dismiss
 

 Defendant contends the trial court erred by denying his motion to dismiss the charge of discharging a firearm into occupied property. Specifically, after Defendant's motion to dismiss was denied, the trial
 
 *675
 
 court instructed the jury, in part, that it could convict Defendant of the charge of discharging a firearm into occupied property if it believed beyond a reasonable doubt that Defendant "knew or had reasonable grounds to believe that the dwelling
 
 was
 
 occupied [.]" (emphasis added). Defendant argues, and the State agrees, the instruction raised a higher evidentiary bar for the State-ordinarily the State would need to prove only that a defendant had "reasonable grounds to believe that the building
 
 might be
 
 occupied[.]"
 
 See
 

 State v. James,
 

 342 N.C. 589
 
 , 596,
 
 466 S.E.2d 710
 
 , 715 (1996) (emphasis added). Defendant contends that the trial court should have granted his motion to dismiss on the ground that the State did not present substantial evidence that Defendant "knew or had reasonable grounds to believe that the dwelling
 
 was
 
 occupied[.]" (emphasis added).
 

 As a preliminary matter, it is not clear whether Defendant has preserved this argument for appeal. Generally, "[i]n order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R.App. P. 10(a)(1) ;
 
 see
 

 State v. Person,
 

 187 N.C.App. 512
 
 , 519,
 
 653 S.E.2d 560
 
 , 565 (2007) ("Although defendant provided no specific reasoning to support the motion to dismiss, he was not required to do so, since it was apparent from the context that he was moving to dismiss all the charges based on the insufficiency of the evidence."),
 
 rev'd in part on other grounds,
 

 362 N.C. 340
 
 ,
 
 663 S.E.2d 311
 
 (2008). At trial, Defendant did not present the trial court with "specific reasoning" to support his motion to dismiss.
 
 See
 

 *516
 

 Person,
 

 187 N.C.App. at 519
 
 ,
 
 653 S.E.2d at 565
 
 . We also do not see how it could be "apparent from the context" of Defendant's motion to dismiss that he was arguing the State did not meet an evidentiary burden higher than would have been necessary to convict him, based on an erroneous jury instruction that had not yet been given. Similarly, we do not see how the trial court could have erred in denying Defendant's motion to dismiss,
 
 solely
 
 based on a jury instruction that had not yet been given.
 
 [1]
 

 Defendant also attempts to re-frame this issue in his reply brief. Rather than arguing the trial court erred at the time it denied his motion to dismiss, Defendant instead "merely contends that the State
 
 *676
 
 [should have had to] prove the crime as the jury was instructed at trial." Notwithstanding the fact that "[a] reply brief does not serve as a way to correct deficiencies in the principal brief[,]"
 
 Larsen v. Black Diamond French Truffles, Inc.,
 
 ---N.C.App. ----, ----,
 
 772 S.E.2d 93
 
 , 96 (2015) (quotation marks omitted), Defendant's argument is without merit.
 

 "When reviewing a sufficiency of the evidence claim, this Court considers whether the evidence, taken in the light most favorable to the [S]tate and allowing every reasonable inference to be drawn therefrom, constitutes substantial evidence of each element of the crime charged."
 
 State v. Taylor,
 

 362 N.C. 514
 
 , 538,
 
 669 S.E.2d 239
 
 , 261 (2008) (quotation marks omitted). At trial, the State established that the shooting occurred in a residential neighborhood in the evening. Ms. Knox also testified that her car was parked outside her home. Although the logical inference that Defendant had reasonable grounds to believe Ms. Knox's home "was" occupied is less strong than the inference that it "might" have been occupied, the State nonetheless presented sufficient evidence for a jury to find accordingly.
 
 See id.; see also
 

 State v. Stone,
 

 323 N.C. 447
 
 , 452,
 
 373 S.E.2d 430
 
 , 433 (1988) ( "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The evidence need only give rise to a reasonable inference of guilt [.]" (citation omitted)).
 

 III. Disjunctive Jury Instruction
 

 Defendant contends the trial court erred in instructing the jury on discharging a firearm into occupied property. Before trial, Defendant was indicted for firing only into the home of Ms. Knox, but the jury instruction on that charge was stated in terms of Defendant's allegedly "discharg[ing] a firearm into
 
 a
 
 dwelling[.]" (emphasis added). Because the jury instruction did not expressly name the home of Ms. Knox as the dwelling that was fired into, Defendant contends the instruction was "disjunctive" and "violated his right to a unanimous verdict" because the instruction "permitted jurors to convict [Defendant] of either of two possible offenses: shooting into Ms. Scales's house or shooting into Ms. Knox's house."
 
 [2]
 
 We are unpersuaded.
 

 Generally, the North Carolina Constitution requires that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury
 
 *677
 
 in open court [.]" N.C. Const. art. I, § 24. As explained by our Supreme Court in
 
 State v. Lyons,
 

 330 N.C. 298
 
 , 302-03,
 
 412 S.E.2d 308
 
 , 311-12 (1991), "a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, either of which is in itself a separate offense, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." (emphasis omitted).
 

 Defendant concedes in his brief that the jury instruction at issue was "not explicitly phrased in the disjunctive[.]"
 
 Cf.
 
 id.
 

 (holding that a jury instruction was disjunctive where it allowed the jury to convict the defendant if
 
 *517
 
 it believed he "committed [an] assault and battery upon Douglas Jones
 
 and/or
 
 Preston Jones"). Instead, Defendant contends the instruction "had the practical effect of a disjunctive instruction[.]"
 
 Cf.
 

 Davis,
 
 188 N.C.App. at 737-42, 656 S.E.2d at 634-37 (holding that a jury instruction was not expressly disjunctive but conducting a
 
 Lyons
 
 analysis,
 
 assuming arguendo
 
 "the instruction could be viewed as being disjunctive"). However, in the present case, we do not believe the jury was presented with either an expressly or functionally disjunctive instruction on the charge of discharging a firearm into occupied property.
 

 Defendant was indicted for firing only into the home of Ms. Knox. During jury selection, the trial court informed the prospective jurors that "[t]he discharge of a firearm into occupied property is alleged to have occurred on the property being then occupied by one Sandra Knox." At trial, the State presented evidence only suggesting that the home that was fired into was Ms. Knox's home. Specifically, when the State asked Ms. Scales whether any of the bullets "actually went into [Ms. Scales's] home[,]" she responded: "No." By contrast, Ms. Knox testified at length about the bullet holes and damage done to her home. Sergeant Bouk testified in great detail about bullet holes in Ms. Knox's home. Officer West expressly testified that there were no bullet holes in Ms. Scales's home. While it may have been a better practice for the trial court to specifically state that Ms. Knox's home was the property involved in its instruction to the jury, based on the record, the trial court did not give a disjunctive instruction on the charge of discharging a firearm into occupied property.
 

 IV. Variance
 

 Defendant also argues that the trial court's instruction on the charge of discharging a firearm into occupied property "created an impermissible risk of variance between the indictment and the proof supporting
 
 *678
 
 conviction." Because Defendant did not object to the jury instructions at trial, we review this argument for plain error.
 
 See
 

 State v. Turner,
 

 98 N.C.App. 442
 
 , 446-48,
 
 391 S.E.2d 524
 
 , 526-27 (1990) (reviewing for plain error an unpreserved argument that there was an impermissible variance between an indictment and jury instruction).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings[.]
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations and quotation marks omitted).
 

 Generally, an impermissible variance has occurred when, although "the State's evidence [might] support the trial court's instruction[,] ... the indictment does not."
 
 Turner,
 

 98 N.C.App. at 448
 
 ,
 
 391 S.E.2d at 527
 
 . For instance, in
 
 State v. Tucker,
 

 317 N.C. 532
 
 , 537,
 
 346 S.E.2d 417
 
 , 420 (1986), the defendant was indicted for kidnapping. "The kidnapping indictment charge [d] that [the] defendant committed kidnapping only by unlawfully
 
 removing
 
 the victim 'from one place to another.' "
 

 Id.
 

 at 538
 
 ,
 
 346 S.E.2d at 421
 
 . However, the trial court "repeatedly instructed the jury that [the] defendant could be convicted if he simply unlawfully
 
 restrained
 
 the victim, 'that is, restricted [her] freedom of movement by force and threat of force.' "
 

 Id.
 

 Although the State's evidence supported the judge's instructions to the jury, the indictment did not.
 

 Id.
 

 at 537
 
 ,
 
 346 S.E.2d at 420
 
 . Accordingly, the Court held that the trial court committed plain error "[i]nsofar as the instructions given allowed the jury to convict on grounds other than those charged in the indictment[.]"
 

 Id.
 

 at 536
 
 ,
 
 346 S.E.2d at 420
 
 .
 

 In the present case, and similar to Defendant's argument above, Defendant contends the trial court's instruction on the charge of discharging a firearm into occupied property was too broad because it did not specifically state that Ms. Knox's home was the property involved. However, as discussed above, Defendant was indicted for
 
 *518
 
 firing only into Ms. Knox's home; the trial court informed the jury pool that Defendant was charged with firing only into Ms. Knox's home; and the evidence
 
 *679
 
 at trial supported only this theory of the charge. Therefore, it was clear the trial court's instruction on this charge applied only to Defendant allegedly firing into Ms. Knox's home. Defendant's argument is without merit.
 

 V. Victim Impact Evidence
 

 Defendant also contends the trial court erred by allowing the introduction of victim impact evidence during the guilt-innocence phase of trial. Generally, "the effect of a crime on a victim's family often has no tendency to prove whether a particular defendant committed a particular criminal act against a particular victim; therefore victim impact evidence is usually irrelevant during the guilt-innocence phase of a trial and must be excluded."
 
 State v. Graham,
 

 186 N.C.App. 182
 
 , 190,
 
 650 S.E.2d 639
 
 , 645 (2007). Defendant also concedes that he did not object at trial to the victim impact evidence he challenges on appeal. Accordingly, "we must limit our review to whether admission of [the] victim[ ]impact evidence constitutes plain error."
 
 State v. Bowman,
 

 349 N.C. 459
 
 , 477,
 
 509 S.E.2d 428
 
 , 439 (1998).
 

 Defendant challenges the following testimony the State elicited from Ms. Scales during the guilt-innocence phase of trial:
 

 Q. How has this impacted your daughter?
 

 A. She is-is very shaken still. If she hears a loud noise or anything that sounds like a shot, it could even be like a car backfiring, she gets shaky. She runs to me and she clings to me.
 

 And, you know, she-she has talked about it. She'll just talk about it or whatever, but we have considered counseling for her because this has affected her. Even though she was five then, she's seven now it's still with her, and I have to get her through that each time something happens. And she relives it all over again.
 

 ...
 

 Q. How has this impacted you?
 

 A. Well, it-definitely emotionally. I've been afraid. When they text[ed] me and told me that he had been released, someone had posted his bond, I immediately called the police because I was in fear of my life for him-retaliation for him having to be in jail all of that time.
 

 *680
 
 So it's, like, I would dream about him. I moved to a bigger house so I would-every time I would go around a dark corner, I would think I would see him. Or he would be in the back of the house.
 

 He could possibly be hiding, so it's, like, now to the point where because he was out, I would have to go home, turn on all my lights, inspect my entire house before I can even take a shower or lay down. I have to stick butter knives in my windows because at this point, I just didn't know what he was capable of doing.
 

 The State further elicited testimony from Ms. Scales that she was evicted as a result of the incident because her "neighbors did not feel safe[.]" Ms. Knox also testified:
 

 Q. Did you remain at your home that evening?
 

 A. No, I left.
 

 Q. Did you return the next day?
 

 A. Yes, to get some items of clothing.
 

 Q. Did you-did you stay at your house the next night?
 

 A. No, I left and went to my daughter's house.
 

 Q. When was the next time that you actually were able to stay at your own home?
 

 A. About three weeks-I-let's see. I left for three weeks.
 

 Q. And why did you leave for three weeks?
 

 A. Because I was just frightened. I was-I was-I was-every time I would hear a door or somebody knock on the door or somebody would call me, I would just jump. I was just-I was just scared.
 

 In
 
 Graham,
 

 186 N.C.App. at 187-92
 
 ,
 
 650 S.E.2d at 644-47
 
 , this Court held that a trial
 
 *519
 
 court erred when it allowed similar victim impact evidence at trial. However, after "[e]xamining the entire record," the
 
 Graham
 
 Court also found there was "considerable evidence of [the] defendant's guilt [.]"
 
 Id.
 
 at 192,
 
 650 S.E.2d at 647
 
 . Specifically, "the State presented extensive evidence from two eyewitness who were well-acquainted with [the] defendant and who positively identified him at trial, and [it presented] evidence that [the] defendant fled to Alabama shortly after hearing that the crime had been publicized."
 

 Id.
 

 Based on
 
 *681
 
 that evidence, the
 
 Graham
 
 court concluded there was not "a reasonable possibility that the jury's verdict would have been different" absent the erroneous evidence, and this Court held that there was no prejudicial error in that case.
 

 Id.
 

 In the present case, it also appears that the trial court impermissibly admitted victim impact evidence at trial. However, the State presented extensive evidence from Ms. Scales of Defendant's guilt, including (1) her confrontations with Defendant shortly before the shooting over a shotgun Defendant believed was in her home; (2) her positive identification of Defendant in the Jeep just before shots were fired; and (3) the incriminating phone conversation between Ms. Scales and Defendant shortly after the shooting. That phone conversation was overheard by the police, who also found seven shell casings in the street near where the Jeep had been when shots were fired. Moreover, unlike
 
 Graham,
 
 in which this Court conducted a prejudicial error analysis, we review Defendant's argument on appeal for plain error because he did not object to the challenged testimony at trial.
 
 See
 

 Lawrence,
 

 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 . This imposes a higher burden for Defendant to overcome.
 
 See
 
 id.
 

 After examining the entire record, we do not find plain error in the present case.
 

 VI. Attorney's Fees
 

 In Defendant's final argument, he contends that the trial court "violated N.C. Gen.Stat. § 15A-1343(b)(10), committed clerical error, or violated [Defendant's] right to be present at sentencing by assigning attorney's fees to the judgment for possession of a firearm by a felon rather than the judgment for discharging a weapon into an occupied dwelling." We disagree.
 

 Specifically, Defendant argues that had the attorney's fees been assigned to the judgment for discharging a weapon into an occupied dwelling, for which Defendant received a jail sentence, those fees would have been docketed as a civil lien against Defendant.
 
 See
 
 N.C. Gen.Stat. § 7A-455(b) (2015) ("[T]he court shall direct that a judgment be entered ... for the money value of services rendered by assigned counsel, the public defender, or the appellate defender, ... which shall constitute a lien as prescribed by the general law of the State applicable to judgments."). Instead, the trial court assigned the attorney's fees to the judgment for possession of a firearm by a felon, the payment of which was a condition of Defendant's probation for that conviction. N.C. Gen.Stat. § 15A-1343(b)(10) states: "As [a] regular condition[ ] of probation, a defendant must: ... [p]ay the State of North Carolina for the costs of
 
 *682
 
 appointed counsel ... to represent him in the case(s) for which he was placed on probation." N.C. Gen.Stat. § 15A-1343(b)(10) (2015).
 

 Initially, N.C. Gen.Stat. § 15A-1343(b)(10) refers to the "case(s) for which [a defendant] was placed on probation." N.C. Gen.Stat. § 15A-1343(b)(10) does not state that this monetary condition is limited to the judgment(s) in "which [a defendant] was placed on probation," nor does it state that this condition is limited to the charge(s) "for which [a defendant] was placed on probation."
 
 [3]
 

 Assuming
 
 arguendo
 
 "case" effectively means "charge" for the purposes of N.C. Gen.Stat. § 15A-1343(b)(10), Defendant's argument still fails. At trial, after the trial court had rendered a sentence for Defendant's conviction of discharging a weapon into an occupied dwelling, a Class D felony, the trial court rendered a sentence for Defendant's
 
 *520
 
 conviction of possession of a firearm by a felon, a Class G felony. While the trial court was making this determination, the following exchange occurred between the trial court and Defendant's counsel:
 

 THE COURT:.... With respect to the jury verdict of guilty with respect to possession of a firearm by a felon, upon that verdict being recorded, it's the judgment according to that case that this defendant be imprisoned for a minimum of 17 months and a maximum of 30 months. That sentence to run at the expiration of the sentence imposed in the first case [discharging a firearm into an occupied dwelling]. That sentence[,] however, is suspended and the defendant upon his release from incarceration in the first matter is to report to his probation officer within 72 hours of that release.
 

 At which time he is to be on supervised probation for a term of 36 months under the following terms and [conditions]: First, that he provide a DNA sample, if he has not previously done so at that time; that he pay the Court costs; that he reimburse the state for the cost of his attorney.
 

 [Counsel], do you know your hours in these matters?
 

 [COUNSEL]: Exactly, it is 51.73. And Your Honor, I have-the spread sheet has calculated that amount to be $3,621.10.
 

 *683
 
 THE COURT: And you're calculating that on the Class D?
 

 [COUNSEL]: I am, Your Honor.
 

 THE COURT: All right. I am going to award an attorney's fee in the amount of $3,621.10; that to be paid under-as a monetary condition of that judgment.
 

 Defendant argues that, because the trial court asked Defendant's attorney if he was calculating his fees based upon the Class D felony, which in this case was the conviction for discharging a weapon into an occupied dwelling, the trial court meant to attach the attorney's fees to that charge. However, in context, it is clear that the trial court was discussing the attorney's fees in relation to the conviction for possession of a firearm, which sentence was suspended. It is also clear that the trial court
 
 did
 
 intend for the amount of the attorney's fees to be based upon the Class D felony instead of the Class G felony. This is because the relevant statutes and rules of the Office of Indigent Defense Services ("IDS") required the attorney's fees to be based upon the Class D felony charge in this case.
 

 N.C. Gen.Stat. § 7A-458 states in relevant part:
 

 The fee to which an attorney who represents an indigent person is entitled shall be fixed in accordance with rules adopted by the Office of Indigent Defense Services. Fees shall be based on the factors normally considered in fixing attorneys' fees, such as the nature of the case, and the time, effort and responsibility involved.
 

 N.C. Gen.Stat. § 7A-458 (2015). N.C. Gen.Stat. § 15A-1343(e) states in relevant part:
 

 Unless the court finds there are extenuating circumstances, any person placed upon supervised or unsupervised probation under the terms set forth by the court shall, as a condition of probation, be required to pay all court costs and all fees and costs for appointed counsel ... in the case in which the person was convicted. The fees and costs for appointed counsel ... shall be determined in accordance with rules adopted by the Office of Indigent Defense Services. The court shall determine the amount of those costs and fees to be repaid and the method of payment.
 

 *684
 
 N.C. Gen.Stat. § 15A-1343(e). Pursuant to the mandates of N.C. Gen.Stat. §§ 7A-458 and 15A-1343(e), IDS has established rules and procedures for compensating appointed counsel. When an attorney represents a defendant on multiple charges heard before the same judge and decided on the same day, that attorney submits a single fee application.
 
 See
 
 Office of Indigent Defense Services,
 
 Memorandum,
 
 p. 4, December 3, 2015, at http://www.ncids.org/Rules% 20&% 20Procedures/Fee% 20and% 20Expense% 20Policies/Atty% 20Fee% 20policies,% 20non-capital.pdf The rates for appointed counsel in superior court depend on the class of the charged offenses. "For all cases finally disposed in Superior Court where the most serious original charge was a Class A through D felony, the ... rate will be $70
 
 *521
 
 per hour. For all other cases finally disposed in Superior Court, including misdemeanor appeals, the ... rate will be $60 per hour."
 
 Id.
 
 at 7. As noted above, when counsel defends a defendant on multiple charges, the rate is based upon the most serious offense charged.
 
 Id.
 
 The Administrative Office of the Courts has produced official fee application forms corresponding with the rules and procedures of IDS, including AOC-CR-225, which is the fee application form for non-capital criminal trials. AOC-CR-225 directs the attorney to indicate only the "most serious original charge" on the form to serve as the basis for calculating the appropriate attorney fee. AOC-CR-225.
 

 In this case, Defendant was charged and convicted of two crimes: (1) discharging a weapon into an occupied dwelling, which is a Class D felony, and (2) possession of a firearm by a felon, which is a Class G felony. Pursuant to IDS rules and procedures, the appropriate attorney's fee, to be assessed as a single fee for representation services for both the charges, was properly based upon the most serious charge-the Class D felony. Defendant was given an active sentence for the Class D felony, and given a suspended sentence with probation for the Class G felony, to start at the expiration of Defendant's active sentence. N.C. Gen.Stat. § 7A-455 directs in part:
 

 (b)
 
 In all cases
 
 the court shall direct that a judgment be entered in the office of the clerk of superior court for the money value of services rendered by assigned counsel, ... which shall constitute a lien as prescribed by the general law of the State applicable to judgments. [A]ny funds collected by reason of such judgment shall be deposited in the State treasury and credited against the judgment. The value of services shall be determined in accordance with rules adopted by the Office of Indigent Defense Services.
 

 ....
 

 *685
 
 (c) No ... judgment under subsection (b) of this section shall be entered unless the indigent person is convicted. If the indigent person is convicted, the ... judgment shall become effective and the judgment shall be docketed and indexed pursuant to G.S. 1-233 et seq., in the amount then owing, upon the later of (i) the date upon which the conviction becomes final
 
 if the indigent person is not ordered, as a condition of probation,
 
 to pay the State of North Carolina for the costs of his representation in the case or (ii) the
 
 date upon which the indigent person's probation is terminated, is revoked, or expires
 
 if the indigent person is so ordered.
 

 N.C. Gen.Stat. § 7A-455 (2015) (emphasis added).
 

 Because Defendant was convicted, the trial court was required to "direct that a judgment be entered in the office of the clerk of superior court for the money value of services rendered by assigned counsel, ... constitut[ing] a lien [.]" N.C. Gen.Stat. § 7A-455(b). In the present case, the appropriate attorney's fee for this judgment was required to have been calculated pursuant to the $70.00 per hour rate applicable for the Class D felony, even though some of the time spent on the case was dedicated to defense of the Class G felony.
 
 Memorandum,
 
 pp. 4, 7. It seems clear that this requirement is why the trial court, when discussing the applicable attorney's fee in connection with the Class G felony of possession of a firearm by a felon, asked if Defendant's attorney was calculating the rate based on the Class D felony of discharging a weapon into an occupied dwelling.
 

 Defendant argues that the language of N.C. Gen.Stat. § 15A-1343(b)(10) : "As [a] regular condition[ ] of probation, a defendant must: ... [p]ay the State of North Carolina for the costs of appointed counsel ... to represent him in the case(s) for which he was placed on probation[,]" prohibited the trial court from requiring Defendant to pay the costs of his appointed counsel at the Class D rate, because "the case[ ] for which he was placed on probation" was only a Class G felony. However, even assuming
 
 arguendo
 
 that "case" in this instance is equivalent to "charge," Defendant ignores the fact that pursuant to IDS rules and regulations, because he was convicted of both the Class G and Class D felonies on the same day and before the same judge, there was only one fee which covered both charges; the costs of
 
 *522
 
 his appointed counsel for both the Class G felony and the Class D felony are the same, and are calculated at the same rate-the $70.00 per hour rate for Class D felonies. IDS rules and regulations do not allow for separating the hours spent by appointed
 
 *686
 
 counsel for individual charges-all work done for each individual charge is considered work done for every charge, as part of the same case. Therefore, for the purposes of N.C. Gen.Stat. § 15A-1343(b)(10), the appropriate cost of appointed counsel for the Class G charge was 51.73 hours at the $70.00 Class D felony rate.
 

 The lien judgment for this full amount was already ordered to be entered pursuant to N.C. Gen.Stat. § 7A-455. The only change resulting from Defendant's being given probation on the Class G felony was that payment of the attorney's fee became a condition of his probation pursuant to N.C. Gen.Stat. § 15A-1343(b)(10). This is contemplated in N.C. Gen.Stat. § 7A-455 :
 

 [The] judgment [creating the lien] shall become effective ... in the amount then owing, upon the later of (i) the date upon which the conviction becomes final
 
 if the indigent person is not ordered, as a condition of probation, to pay the State of North Carolina for the costs of his representation in the case
 
 or (ii)
 
 the date upon which the indigent person's probation is terminated, is revoked, or expires
 
 [.]
 

 N.C. Gen.Stat. § 7A-455(c) (emphasis added). The trial court did not err in making payment of all the costs of appointed counsel, based upon the rate for Class D felonies, a condition of Defendant's probation for the charge of possession of a firearm by a felon.
 

 Defendant further argues that his right to be present during his sentencing was violated because "[t]he trial court orally assigned the fees to the Class D judgment, but assigned the fees to the Class G judgment when the written judgments were entered." As we have discussed above, the trial court assigned the fees to the Class G felony judgment in open court and in Defendant's presence. The trial court merely made sure the fees were properly calculated at the Class D rate. This argument is without merit.
 

 NO ERROR IN PART; NO PLAIN ERROR IN PART.
 

 Judges DILLON and ZACHARY concur.
 

 [1]
 

 Defendant does not contend on appeal that the State failed to present substantial evidence that Defendant had reasonable grounds to believe that the building "might be" occupied.
 

 [2]
 

 Defendant did not object to any of the jury instructions given at trial. However, "[a] defendant's failure to object at trial to a possible violation of his right to a unanimous jury verdict does not waive his right to appeal on the issue, and it may be raised for the first time on appeal."
 
 State v. Davis,
 

 188 N.C.App. 735
 
 , 739,
 
 656 S.E.2d 632
 
 , 635 (2008) (quotation marks omitted).
 

 [3]
 

 Black's Law Dictionary defines case in relevant part as "[a] ... criminal proceeding[.]" BLACK'S LAW DICTIONARY 243 (9th ed.2009). Black's defines charge in relevant part as "[a] formal accusation of an offense [.]"
 
 Id.
 
 at 265.