An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-456

Filed 16 July 2025

Davie County, Nos. 18CRS051624-290, 18CRS051625-290, 18CRS051627-290, 18CRS051628-290

STATE OF NORTH CAROLINA

v.

NORMAN LOUIS AMMERMAN

Appeal by defendant from judgments entered 28 July 2023 and order entered 31 July 2023 by Judge John Michael Morris in Davie County Superior Court. Heard in the Court of Appeals 22 April 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Chris D. Agosto Carreiro, for the State.*
>
> *Daniel M. Blau for defendant-appellant.*

ZACHARY, Judge.

Defendant Norman Louis Ammerman appeals from the trial court's judgments entered upon a jury's verdicts finding him guilty of two counts of statutory sexual offense with a child 15 years of age or younger and four counts of taking indecent liberties with a child. Defendant also appeals the court's civil order requiring him to register as a sex offender. On appeal, Defendant argues that the trial court committed

plain error by: 1) allowing the State to introduce certain victim-impact evidence, and 2) allowing the State to introduce certain evidence that constituted impermissible vouching. Defendant also contends that the trial court erred by denying his motion to dismiss and abused its discretion by failing to declare a mistrial *sua sponte*. After careful review, we conclude that Defendant received a fair trial, free from prejudicial or plain error.

## I.    Background

Defendant repeatedly sexually abused his granddaughter, M.K.,[1] by groping and digitally penetrating her, beginning when she was 12 years old and continuing until she was 15 years old. After a number of years, M.K. disclosed the sexual abuse to her mother. M.K.'s mother and a family friend drove M.K. to the Brockport police station where M.K. reported Defendant's sexual abuse. As part of the investigation, M.K. underwent two forensic interviews at the Bivona Child Advocacy Center in May and July 2018.

On 26 November 2018, a Davie County grand jury indicted Defendant for two counts of statutory sexual offense with a child 15 years of age or younger and four counts of taking indecent liberties with a child.

Defendant's case came on for jury trial on 24 July 2023 in Davie County Superior Court. At trial, M.K. testified at length regarding Defendant's sexual abuse

---

[1] To protect the identity of the minor child, we use the initials "M.K." to which the parties stipulated. *See* N.C.R. App. P. 42(b).

and its effects on her. Several other witnesses testified as to the investigation of Defendant's sexual abuse and M.K.'s disclosures of the abuse, including a law enforcement officer, a forensic interviewer, a detective, an FBI task force officer, a family friend, and M.K's best friend. Video recordings and transcripts of M.K.'s two forensic interviews were admitted into evidence and published to the jury.

Defense counsel moved to dismiss all charges at the close of the State's evidence and renewed his motion at the close of all evidence. The trial court denied the motion on both occasions.

On 28 July 2023, the jury returned verdicts finding Defendant guilty of all charges. That same day, the trial court entered judgments sentencing Defendant to four consecutive terms of 16 to 29 months' imprisonment in the custody of the North Carolina Department of Adult Correction for his convictions for taking indecent liberties with a child and two consecutive terms of 240 to 348 months' imprisonment for his convictions for statutory sexual offense with a child 15 years of age or younger. On 31 July 2023, the court also entered an order requiring Defendant to register as a sex offender and an order prohibiting Defendant from having any contact with M.K.

Defendant gave oral notice of appeal from the criminal judgments and timely filed notice of appeal from the court's 31 July 2023 sex-offender order.[2]

---

[2] Despite Defendant's timely appeal from the civil order requiring him to register as a sex offender, Defendant raises no arguments thereto in his appellate brief. Accordingly, we shall address the order no further.

## II.    Discussion

On appeal, Defendant raises four issues. First, he argues that the trial court committed plain error by: 1) admitting victim-impact evidence during the guilt-innocence phase of the trial, and 2) admitting evidence that constituted impermissible vouching. Defendant also contends that the court erred by denying his motion to dismiss and abused its discretion by failing to declare a mistrial *sua sponte*.

### A. Evidentiary Challenges

#### 1.  *Plain-Error Review*

Initially, we note that Defendant did not object to the admission of the evidence that he now challenges as improperly admitted victim-impact evidence and impermissible vouching.

In criminal cases, certain evidentiary and instructional issues that were not properly preserved by objection at trial and that are not otherwise "deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4). On appeal, Defendant "specifically and distinctly contend[s]" that the trial court's admission of certain evidence constituted plain error, and he requests such review. *Id.*

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Betts*, 377 N.C. 519, 522, 858 S.E.2d 601, 604 (2021) (citation omitted). "To show that an error was fundamental, a

defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (citation omitted). "Finally, the defendant must show that the error is an exceptional case that warrants plain error review, typically by showing that the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158, 900 S.E.2d 781, 786 (2024) (cleaned up).

### 2. *Victim-Impact Evidence*

Defendant argues that the trial court erred by admitting "irrelevant, repetitive, and graphic victim-impact evidence," the admission of which prejudiced him such that "the jury almost certainly would have returned different verdicts absent the overwhelming amount of victim-impact evidence that the State presented throughout its case." We do not agree that the admission of victim-impact evidence at Defendant's trial rose to the level of plain error.

"Victim-impact evidence includes the nature and extent of any physical, psychological, or emotional injury suffered by the victim or their family as a result of the offense committed by the defendant." *State v. McCutcheon*, 281 N.C. App. 149, 156–57, 867 S.E.2d 572, 578 (2021) (cleaned up); *see also* N.C. Gen. Stat. § 15A-833(a)(1) (2023).

"A victim has the right to offer admissible evidence of the impact of the crime, which shall be considered by the court or jury in sentencing the defendant." *State v. Bowman*, 188 N.C. App. 635, 645, 656 S.E.2d 638, 647 (citation and emphasis

omitted), *supersedeas and disc. review denied*, 362 N.C. 475, 666 S.E.2d 649 (2008). "[V]ictim[-]impact evidence is usually irrelevant during the guilt-innocence phase of a trial and must be excluded." *State v. Graham*, 186 N.C. App. 182, 190, 650 S.E.2d 639, 645 (2007), *appeal dismissed and disc. review denied*, 362 N.C. 477, 666 S.E.2d 765 (2008). Nevertheless, "victim[-]impact evidence which tends to show the context or circumstances of the crime itself, even if it also shows the effect of the crime on the victim and his family, is an exception to the general rule, and such evidence is relevant and therefore admissible at the guilt-innocence phase." *Id.* at 191, 650 S.E.2d at 646.

On appeal, Defendant challenges the admission of various portions of M.K.'s trial testimony in which she detailed the deterioration of her mental health, including descriptions of self-harm, drug use, and hospital stays. Defendant also highlights testimony from both a family friend and M.K.'s best friend on the same subjects and argues that such "gruesome" victim-impact evidence was inadmissible. The State, meanwhile, refers to the challenged portions of testimony as victim-impact evidence but argues that its admission was neither reversible nor plain error, in that "[e]vidence of [M.K.'s] mental and psychological state after the abuse stopped was relevant for the jury to properly assess her credibility."

This Court's analysis in *State v. Charleston*, 248 N.C. App. 671, 789 S.E.2d 513 (2016), is instructive. In *Charleston*, the defendant fired gunshots at the victim's home. 248 N.C. App. at 674, 789 S.E.2d at 515. At trial, the State elicited testimony

concerning the emotional impact of the crime on the victim and her daughter. *Id.* at 679–80, 789 S.E.2d at 518. This Court determined "that the trial court impermissibly admitted victim[-]impact evidence at trial. However, the State presented extensive evidence from [the victim] of [the d]efendant's guilt"; accordingly, there was no plain error. *Id.* at 681, 789 S.E.2d at 519.

In the case at bar, assuming, *arguendo*, that the trial court erred in admitting victim-impact testimony, Defendant cannot show plain error. M.K. consistently described the nature and details of Defendant's sexual abuse through both her extensive testimony at trial and her forensic interviews, which were admitted into evidence and published to the jury without objection by Defendant. Furthermore, several additional witnesses testified for the State concerning the investigation of Defendant's sexual abuse and M.K.'s disclosures thereof, including a law enforcement officer, a forensic interviewer, a detective, an FBI task force officer, a family friend, and M.K's best friend. In light of the plethora of evidence of Defendant's guilt, Defendant is unable to meet his high burden of demonstrating on appeal that the admission of this victim-impact testimony constituted plain error. *See id.*

### 3. *Vouching*

Defendant next argues that the trial court committed plain error "by allowing the State to introduce videos and transcripts of M.K.'s [forensic] interviews where the interviewer repeatedly vouched for M.K.'s credibility." The State contends that because Defendant invited any error, he has waived appellate review of this issue,

including plain-error review.

"Our case law has long held that a witness may not vouch for the credibility of a victim." *State v. Giddens*, 199 N.C. App. 115, 121, 681 S.E.2d 504, 508 (2009), *aff'd per curiam*, 363 N.C. 826, 689 S.E.2d 858 (2010). Rather, "it is fundamental to a fair trial that the credibility of witnesses be determined by the jury." *State v. Betts*, 267 N.C. App. 272, 280, 833 S.E.2d 41, 46 (2019) (cleaned up), *aff'd as modified*, 377 N.C. 519, 858 S.E.2d 601 (2021).

The doctrine of invited error is codified in N.C. Gen. Stat. § 15A-1443, which states in pertinent part: "A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct." N.C. Gen. Stat. § 15A-1443(c). "Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." *State v. Crane*, 269 N.C. App. 341, 343, 837 S.E.2d 607, 608 (2020) (citation omitted). "Our courts have consistently applied the invited error doctrine when a defendant's *affirmative actions directly precipitate* error." *State v. Miller*, 289 N.C. App. 429, 433, 889 S.E.2d 231, 234 (2023) (emphasis added).

At trial, the State introduced Ms. Malsegna, who conducted both of M.K.'s forensic interviews at Bivona Child Advocacy Center. Her testimony was admitted without objection from defense counsel. The State also introduced video recordings of these forensic interviews and offered them into evidence as State's Exhibit 2—again, without objection from defense counsel; to the contrary, defense counsel affirmatively

stated that he had no objection. And when State's Exhibit 2 was published to the jury

the following day, defense counsel again reiterated that he had no objection. Shortly

after the jury viewed State's Exhibit 2, the jury sent a note to the judge requesting a

transcript of the video recordings. With the consent of counsel for both parties, the

court provided the transcripts to the jury.

Defendant contends that the trial court erred in admitting the video recordings

of the forensic interviews and transcripts because "Ms. Malsegna both implicitly and

explicitly vouched for M.K.'s credibility during both interviews," as evidenced by the

following statements:

> [MS. MALSEGNA:] I'm sorry this happened to you, . . . but
> thank you for telling me.
>
> . . . .
>
> When I ask those questions, I'm not blaming you.
>
> . . . .
>
> [W]hen I ask the questions, it's not—it's no judgment.
>
> . . . .
>
> I'm so glad you told [your mom].
>
> . . . .
>
> [T]his is not your fault, and, you know, I'm really glad that
> you did tell.
>
> . . . .
>
> [W]hen I ask you the questions, it's not because I don't

believe you or I'm judging you or anything like that. It's just that sometimes understanding why a teenager might tell or not tell actually kind of helps us understand and kind of move to a certain direction in an investigation. So, when I ask you that question, I'm not judging you, I want you to know that. . . . [B]ecause what you're saying makes complete sense.

Defendant argues that "[t]hese were not neutral statements from a detached investigator; they were affirmations that the abuse M.K. alleged had actually occurred." We disagree. But regardless, Defendant cannot show the prejudice required to establish plain error.

To begin, the trial court delivered the following limiting instructions during the jury charge, clarifying that the recordings were admitted solely for the limited purpose of "illustrating and explaining the testimony of a witness":

> Video recordings and audio recordings were introduced as evidence in this case *for the purpose of illustrating and explaining the testimony of a witness. These video recordings and audio recordings may not be considered by you for any other purpose.*
>
>     . . . .
>
> In regard[ ] to the interview transcripts, two unofficial transcripts of interviews have been introduced into evidence. These are not official transcripts. For that reason, you must remember that in your jury deliberations, these transcripts are not entitled to any greater weight than the individual recollection of other jurors.

(Emphasis added).

As our Courts have long held, "[t]he law presumes that jurors follow the court's

- 10 -

instructions." *State v. Tirado*, 358 N.C. 551, 581, 599 S.E.2d 515, 535 (2004), *cert. denied*, 544 U.S. 909, 161 L. Ed. 2d 285 (2005).

This Court has previously determined that our task upon review of alleged vouching is to view the challenged statements in the context in which the witness made them, consider what prompted the statements, and analyze the witness's purpose in making the statements. *State v. Worley*, 268 N.C. App. 300, 308, 836 S.E.2d 278, 285 (2019), *disc. review denied*, 375 N.C. 287, 846 S.E.2d 285 (2020). However, Ms. Malsegna's statements from the forensic interviews were not admitted as trial testimony or for any other substantive evidentiary value. Rather, the statements were admitted for the limited purpose of "illustrating and explaining the testimony of a witness."

Defendant has conflated the forensic interviews—part of the fact-finding investigation before charges were filed—with impermissible expert-witness testimony at trial. Accordingly, Ms. Malsegna's statements in the recorded forensic interviews did not constitute vouching. Instead, Ms. Malsegna's statements were merely her responses to M.K.'s concerns regarding Defendant's behavior in a way that reflected her training and experience working with child-victims of physical and sexual abuse.

We therefore discern no error, let alone plain error, in the trial court's admission of the video recordings or the transcripts of the forensic interviews. Defendant's argument is overruled.

**B. Motion to Dismiss**

Defendant contends that the trial court "erred by denying [his] motion to dismiss where the State's evidence was insufficient to prove him guilty" of one of the charges of statutory sexual offense with a child 15 years of age or younger. We disagree.

### 1. *Standard of Review*

"We review the trial court's denial of a motion to dismiss de novo." *State v. Gibbs*, 293 N.C. App. 707, 713, 901 S.E.2d 649, 655 (2024). "[U]pon [the] defendant's motion for dismissal, the question for the [c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *Id.* (citation omitted). "If so, the motion is properly denied." *Id.* (citation omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Ware*, 188 N.C. App. 790, 793, 656 S.E.2d 662, 664 (citation omitted), *disc. review denied*, 362 N.C. 480, 667 S.E.2d 278 (2008). "Evidence need not be irrefutable or uncontroverted to be substantial." *Gibbs*, 293 N.C. App. at 713, 901 S.E.2d at 655 (cleaned up). "[A]ll evidence is considered in the light most favorable to the [S]tate, and the [S]tate is entitled to every reasonable inference therefrom." *Ware*, 188 N.C. App. at 793, 656 S.E.2d at 664 (cleaned up).

### 2. *Analysis*

Our General Statutes provide, in relevant part, that "[a] defendant is guilty of a Class B1 felony if the defendant engages in a sexual act with another person who is 15 years of age or younger and the defendant is at least 12 years old and at least six years older than the person." N.C. Gen. Stat. § 14-27.30(a). One of the definitions of a "sexual act" is "the penetration, however slight, by any object into the genital or anal opening of another person's body." *Id.* § 14-27.20(4).

After the trial court gave the jury a limiting instruction, M.K. testified that during her 2015–2016 school break, Defendant digitally penetrated her genitals while in a motel in Georgia.

> [M.K.:] . . . He would eventually start giving me a massage, except that night it was different.
>
> [THE STATE:] [M.K.], why was it different?
>
> [M.K.:] *He put his fingers inside me.*
>
> [THE STATE:] *And when you say that he put his fingers inside of you, please explain to this jury what you mean by that.*
>
> [M.K.:] *He put his fingers inside of my vaginal canal.*
>
> [THE STATE:] Okay. And is that a different type of touching than when you were talking about your labia?
>
> [M.K.:] Yes. Before, it was just the outside, and he would just touch the outside of it.

(Emphases added).

M.K. then confirmed that this type of sexual abuse also occurred in Davie

County, North Carolina, during the same timeframe:

> [THE STATE:] So during this winter when you came back
> from Georgia, is it fair to say after you came back to North
> Carolina, it was that same conduct?
>
> [M.K.:] Yes.

Defendant asserts that M.K.'s testimony was ambiguous, in that "[i]t was not clear whether the sexual touching also included digital penetration," and thus, "the State's evidence was only sufficient to raise a suspicion or conjecture that digital penetration had occurred." Given M.K.'s clear testimony, we find this assertion lacking.

In *State v. Wilson*, this Court concluded that

> a rational juror, hearing this description of [the d]efendant
> being "in" [the victim]'s genital area, wanting her to
> experience sexual stimulation by his touch, feeling that she
> was "wet," and feeling that she was sexually stimulated by
> his touch, could reasonably infer that [the d]efendant at
> least penetrated [the victim]'s labia.

260 N.C. App. 698, 702, 818 S.E.2d 160, 163, *disc. review denied*, 371 N.C. 792, 821 S.E.2d 173 (2018). Accordingly, we determined that the facts of the case "raise[d] more than a mere suspicion or conjecture that penetration occurred." *Id.*; *see also State v. Corbett*, 264 N.C. App. 93, 99, 824 S.E.2d 875, 879 (determining that testimony that the defendant was able to touch "between" the victim's labia was sufficient evidence for "reasonable jurors" to find that penetration had occurred), *appeal dismissed*, 373 N.C. 176, 833 S.E.2d 809 (2019).

In the case before us, M.K. specifically testified that Defendant "*put his fingers inside of* [*her*] *vaginal canal*" when he sexually abused her in a Georgia motel. She then affirmed that this abuse was followed by the "same conduct" when they returned to North Carolina. Such evidence raises "more than a mere suspicion or conjecture that penetration occurred." *Wilson*, 260 N.C. App. at 702, 818 S.E.2d at 163. Thus, the trial court did not err by denying Defendant's motion to dismiss.

## C. Mistrial

Defendant last asserts that the trial court "abused its discretion by failing to declare a mistrial *sua sponte* after M.K. repeatedly disrupted the proceedings and impaired [his] right to a fair trial." We disagree.

### 1. Standard of Review

"It is well settled that a motion for a mistrial and the determination of whether [the] defendant's case has been irreparably and substantially prejudiced is within the trial court's sound discretion." *State v. Shore*, 258 N.C. App. 660, 678, 814 S.E.2d 464, 475 (2018) (citation omitted). "An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Thompson*, 292 N.C. App. 81, 85, 896 S.E.2d 739, 741 (cleaned up), *disc. review denied*, 385 N.C. 882, 898 S.E.2d 324 (2024).

### 2. Analysis

Defendant argues that "the totality of M.K.'s actions and interactions . . . irreparably damaged [his] ability to receive a fair trial. It was therefore necessary for

the [t]rial [c]ourt to declare a mistrial to protect [his] fundamental trial rights, and the [t]rial [c]ourt abused its discretion by failing to do so."

Upon the defendant's motion "or with his concurrence the judge may declare a mistrial at any time during the trial." N.C. Gen. Stat. § 15A-1061. Nevertheless, "[i]t is appropriate for a trial court to declare a mistrial only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law." *Thompson*, 292 N.C. App. at 85, 896 S.E.2d at 742 (citation omitted). "Misconduct must be determined by the facts and circumstances of each case." *State v. Washington*, 141 N.C. App. 354, 376, 540 S.E.2d 388, 403 (2000) (cleaned up), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001). "The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge." *Id.* (citations omitted).

Defendant identifies the following portions of M.K.'s testimony as prejudicial, beginning with an instance in which she directly addressed her grandfather while answering a question on direct examination:

> [M.K.:] . . . I think that's what makes it the hardest part is because I do love you and I loved our relationship we had. It was -- you changed as soon as it hit -- as soon as that door closed, you were a different man.

Defense counsel immediately objected to this testimony, and the court

instructed M.K.: "Stop."

During cross-examination, M.K. engaged in the following exchange with defense counsel:

> [DEFENSE COUNSEL:] Are you familiar with what I'm asking?
>
> [M.K.:] Do you also know that it's been six years? Do you know that any person that has any sort of post traumatic stress --
>
> [DEFENSE COUNSEL:] [M.K.], you don't get to ask me questions.
>
> [M.K.:] Are you going to ask questions or are you just going to sit there?
>
> [THE STATE]: Objection, Your Honor.
>
> [M.K.]: He's not asking questions.
>
> [THE STATE]: Calm down. Calm down.
>
> THE COURT: Just answer the questions.
>
> [M.K.]: He's not asking questions.
>
> THE COURT: Let him finish his questions, please, and answer the question.

Defendant also complains on appeal of the following exchange during cross-examination where Defendant asserts "M.K. answered non-responsively":

> [DEFENSE COUNSEL:] Was Aunt Brenda there, [Defendant's] sister?
>
> [M.K.:] You mean the woman that he's possibly sleeping with?

. . . .

[M.K.:] Can we get something with the witnesses out of the room? They're making faces. I want some of the witnesses out of the room now. If my witnesses have to be out --

[THE STATE]: Stop talking. Stop talking.

. . . .

THE COURT: Okay. I'm going to make an instruction to any of those that are in the gallery that are observing that you refrain from any emotional -- anything, your body language or facial expressions or anything that would distract from this trial. I'm going to ask the bailiffs if you'd keep an eye on that for me.

DEPUTY: Yes, sir.

THE COURT: And if it's not corrected, then this [c]ourt will take the appropriate measures to ensure that we can proceed with this [trial]. With that said, [defense counsel], you may continue.

Defendant also challenges the following:

[DEFENSE COUNSEL:] And what's your answer?

[M.K.:] I wasn't with him on my 15th birthday. I'm sorry it all merged together. I don't have a filing system like you guys do.

THE COURT: Just answer the question, ma'am.

The final portion of challenged testimony pertains to the attempted clarification of certain dates:

[DEFENSE COUNSEL:] If you don't know --

- 18 -

> [M.K.:] I'm just going to keep saying I don't know, because I don't have a calendar sitting in front of me. So I don't know. So are we going to move on from this question? Because I'm really starting to get frustrated.

Defendant argues that "[w]hile each incident standing alone may not have rendered the trial unfair, the cumulative effect of M.K.'s behavior was prejudicial to [his] defense" and "that M.K. engaged in a pattern of behavior that disrupted the 'atmosphere of judicial calm' to which [he] was entitled." He further contends that "the [t]rial [c]ourt's responses to M.K.'s disruptions were insufficient to protect [his] right to a fair trial."

In *Shore*, this Court addressed a similar set of facts in which a defendant argued that "the 'atmosphere of judicial calm' to which he was entitled" was disrupted where, *inter alia*, a witness interrupted and made several out-of-turn remarks during his testimony. *See* 258 N.C. App. at 678–80, 814 S.E.2d at 475–76. On appeal, we determined that "[i]n each of these instances, [the] defendant did not request additional action by the trial court, move for a mistrial, or object to the trial court's method of handling the alleged misconduct in the courtroom." *Id.* at 680, 814 S.E.2d at 476. Moreover, "with regard to each act that the defendant characterize[d] as abusive and prejudicial, the trial judge was in the best position to investigate any allegations of misconduct." *Id.* We concluded "that the trial court did not abuse its discretion when it did not *sua sponte* declare a mistrial." *Id.*

In the instant case, Defendant similarly "did not request additional action by

the trial court, move for a mistrial, or object to the trial court's method of handling the alleged misconduct in the courtroom." *Id.* Upon review of the totality of the circumstances, particularly the trial judge's reasonable efforts to address the witness's behavior, we conclude that "the trial court did not abuse its discretion when it did not *sua sponte* declare a mistrial." *Id.*

## III.   Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from prejudicial or plain error.

NO ERROR.

Judges ARROWOOD and GRIFFIN concur.

Report per Rule 30(e).